THE AETNA CASUALTY AND SURETY COMPANY, Plaintiff-Appellee, Cross-Appellant, *v.* CORONET INSURANCE COMPANY, Defendant-Appellant, Cross-Appellee.

Fifth District   No. 75-324

Opinion filed December 28, 1976.

Wham & Wham, and Haft, Shapiro & Haft, both of Chicago (Morris A. Haft, of counsel), for appellant.

Craig & Craig, of Mt. Vernon (Glenn E. Moore, of counsel), for appellee.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal by defendant, Coronet Insurance Company (hereinafter Coronet), from a judgment entered by the circuit court of Jefferson County on a motion for summary judgment by plaintiff, Aetna Casualty and Surety Company (hereinafter Aetna). Aetna has filed a cross-appeal contending the judgment was of an insufficient amount. In August, 1966, John B. Hogie was driving a Chevrolet Corvette, which belonged to his roommate, Fred Link. An accident occurred. In the accident, Hogie's passenger, Pamela Hamilton, was injured. She sued Hogie alleging negligence. At the time of the accident, the automobile owned by Fred Link was insured by Coronet. Hogie was insured by Aetna. Coronet learned of the accident from Fred Link on the day it occurred, immediately made an investigation of the accident, and took statements from both Link and Hogie. Hogie maintained at the time that he had Link's permission to use the automobile.

The Coronet policy provided that the named insured, Link, and "any other person using such automobile with the permission of the named insured," are insured. The policy also provided that Coronet would pay on behalf of the insured all sums which the insured should become legally obligated to pay as damages because of bodily injury and property damage sustained by any person arising out of the ownership, maintenance, or use of the automobile, and that Coronet "shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false, or fraudulent." Aetna's policy covering Hogie contained similar provisions.

Hamilton sued Hogie for her injuries. Coronet refused to defend on the ground Hogie did not have Link's permission to drive the automobile, and therefore, was not an "insured person" under the policy.

Hogie's insurer, Aetna, did defend the suit on behalf of Hogie, and arrived at a settlement figure of $35,000. Before accepting the settlement,

Aetna contacted Coronet to allow them to assert their position if they wished to do so and they refused.

After settlement, Aetna subrogated to Hogie's rights and commenced this suit to recover from Coronet the moneys paid by it to Hamilton and to its attorneys. At trial, Aetna asked for summary judgment against Coronet. Aetna's theory was that Coronet's duty to defend was broader than its ultimate duty to compensate. Coronet refused to defend Hogie because it was believed he might not be an "insured" within the meaning of the policy, and Aetna maintained that the refusal was a breach of the contract.

Aetna maintains that because Coronet refused to defend Hogie, Coronet is thus precluded from raising any of its defenses under the policy which it might otherwise have had and raised against Hogie.

Coronet maintains that summary judgment which is granted only when no material fact remains to be litigated, is inappropriate here. They reason that the duty to defend is predicated upon it being shown that Hogie was an "insured" under the policy and that the question of whether Hogie was an "insured" is very much in dispute. Therefore, Coronet believes it is entitled to a trial where the question of whether Hogie truly was an "insured" can be litigated. Coronet wants to explore the elements of consent, and whether the two men were "members of the same household."

The trial court granted the summary judgment upon an implicit finding that Coronet admitted refusing to defend, and further, that the refusal was wrongful in itself regardless of whether Hogie was ultimately found to be an insured. Therefore, Coronet, because of its wrongful refusal, was estopped to prove any defenses it might have had against Hogie's claims to be covered by Coronet.

The trial court found Coronet liable in the amount of $30,000, which was the policy liability limit, and also found Coronet was liable for attorney fees incurred by Aetna in the amount of $1,918.74, for a total of $31,918.74.

In its cross-appeal, Aetna claims that Hogie would have been entitled to recover the entire settlement of $35,000 plus attorney's fees in the amount of $1,918.74 from Coronet had he defended himself. Therefore, Aetna claims the entire amount should be paid to it as Hogie's subrogee.

The issues thus presented for review in this appeal are: (1) whether the trial court erred in granting summary judgment for Aetna; (2) whether Aetna, as subrogee to the rights of Hogie, was entitled to recover the damages paid as well as the costs of Hogie's defense; and (3) whether a recovery of the damages paid by Aetna should have also included that portion paid in excess of the policy limits of Coronet.

■■ Resolution of the first issue involves principles which have been

articulated, along with an exhaustive treatment of their rationale, in *Sims v. Illinois National Casualty Co.*, 43 Ill. App. 2d 184, 193 N.E.2d 123; *McFadyen v. North River Insurance Co.*, 62 Ill. App. 2d 164, 209 N.E.2d 833; *Country Mutual Insurance Co. v. Murray*, 97 Ill. App. 2d 61, 239 N.E.2d 498. (See also *Palmer v. Sunberg*, 71 Ill. App. 2d 22, 217 N.E.2d 463; *Fragman Construction Co. v. Preston Construction Co.*, 1 Ill. App. 3d 1002, 274 N.E.2d 614.) As shown by these cases, in Illinois, the insurer is obligated to defend an action brought against a putative insured where the complaint in that action sets forth a situation which would potentially be covered by the policy. Unless the complaint alleges facts which, if true, would exclude coverage, the potentiality of coverage is present and the insurer has a duty to defend. Underlying this rule is the principle that the duty to defend is broader than the duty to pay. If in a case there is potential coverage but the insurer believes that it has a valid exclusionary coverage defense then the insurer must: (1) secure a declaratory judgment of its rights while defending the potential insured under a reservation of rights, or (2) defend the potential insured under a reservation of rights and adjudicate its coverage in a supplemental suit. (*Country Mutual Insurance Co. v. Murray*, 97 Ill. App. 2d 61, 73, 239 N.E.2d 498, 505.) In such a case, where the insurer fails to take either course of action, its failure to defend is unjustified and in a subsequent action by the insured against the insurer, it will be estopped from raising exclusionary defenses.

■■ In the case at bar, it is undisputed by Coronet that Hogie was potentially covered under its policy and the only issue in this respect was Coronet's exclusionary coverage defense that Hogie did not have Link's permission to use the automobile. Since potential coverage was present, Coronet's refusal to defend was unjustified and in the instant case Coronet is estopped from raising any exclusionary coverage defenses.

■■ There is a view taken by some courts that in a case such as the one at bar, involving two insurance companies, estoppel is an inappropriate penalty against the insurer who unjustifiably refused to defend. (See *Farmers Elevator Mutual Insurance Co. v. American Mutual Liability Insurance Co.* (1969), 185 Neb. 4, 173 N.W.3d 378.) The court in *Farmers Elevator* reasoned that:

> "The failure of Empire to defend caused no damage because Wilmac was defended by American Mutual which was obligated to so do." (185 Neb. 4, 18, 173 N.W.2d 378, 387.)

Thus the argument is that since Hogie was in fact defended by his own insurer, Aetna, he was not prejudiced by Coronet's refusal to defend. Although the argument has superficial appeal, we reject the argument. Estoppel arises as a direct result of the insurer's breach of contract. (*Sims v. Illinois National Casualty Co.*, 43 Ill. App. 2d 184, 193 N.E.2d 123;

*Kinnan v. Charles B. Hurst Co.*, 317 Ill. 251, 148 N.E. 12.) As the court stated in *Sims*:

> "[T]he insurer has no right to insist that the insured be bound by the provisions of the insurance contract inuring to its benefit, i.e., the 'Exclusions' provisions, when it has already breached the contract by violating the provisions inuring to the benefit of the insured, i.e., the defense provisions." (43 Ill. App. 2d 184, 197, 193 N.E.2d 123, 129.)

The contract becomes no less breached because of the fortuitous existence of another insurer who is willing to meet its own obligations. The thrust of Illinois law places a burden upon the primary insurer rather than the insured or any other party, to fulfill its duty to defend and to take any action necessary to preserve its exclusionary defenses. The law also provides simple procedures which are available to the primary insurer in which it can assert its defenses. In the case at bar, to hold that Coronet is not estopped would, in effect, shift that burden to Aetna and would require us to find that, in these circumstances, Coronet's duty to defend is no broader than its duty to pay. Since Coronet's refusal to defend is no less unjustified because Aetna defended Hogie, Coronet is estopped from raising any exclusionary coverage defenses. Thus, there were no material issues left to be tried and, consequently, the trial court properly entered a summary judgment.

■■ Next, we shall consider the question of whether Aetna, as a subrogee of Hogie, is therefore permitted to recover the damages paid and the attorney's fees incurred. By virtue of its policy contract and its unjustified refusal to defend, Coronet stands in the position of the primary automobile liability insurer. (*New Amsterdam Casualty Co. v. Certain Underwriters at Lloyds, London*, 34 Ill. 2d 424, 216 N.E.2d 663.) The general rule defining the extent of Coronet's obligation to Hogie is as stated in *Sims v. Illinois National Casualty Co.*, 43 Ill. App. 2d 184, 194, 193 N.E.2d 123, 127-128, quoting 7 Am. Jur. 2d *Automobile Insurance* §167 (1963):

> " 'By its unjustified refusal to defend an action against the insured, an automobile liability insurer becomes subject to the following new and positive obligations: (1) liability for the amount of the judgment rendered against the insured or of the settlement made by him; (2) liability for the expenses incurred by the insured in defending the suit; (3) liability for any additional damage traceable to its refusal to defend. * * *' "

(See also Annot., 49 A.L.R.2d 694, 717, §10 (1956).) Aetna, on the other hand, under its policy contract was obligated to provide "excess" insurance coverage, that is, insurance in excess "over any other valid and collectible insurance" available to Hogie when driving a non-owned

automobile. In addition, pursuant to its policy, Aetna was obligated to defend Hogie as similarly Coronet was also obligated. The Supreme Court in dealing with a similar question as here said in *New Amsterdam Casualty Co. v. Certain Underwriters at Lloyds, London*, 34 Ill. 2d 424, 431, 216 N.E.2d 663:

> "* * * [W]e think the better view is expressed in *Continental Casualty Co. v. American Fidelity & Casualty Co.* (7th Cir.) 275 F.2d 381, wherein the court held the excess insurer was entitled to be reimbursed for its costs of defense as well as for the damages paid. Here, plaintiff had an interest to protect, for it would be liable for any damages in excess of the limits of the Lloyds policy. As long as defendant disclaimed coverage and refused to defend Fiske, there was no admitted or established 'other valid and collectible' insurance. Under its contract of insurance with Fiske, plaintiff was therefore compelled to defend and pay the damages. This is not an action by plaintiff for contribution; rather it is an action in subrogation of its insured's right to be fully protected for damages and costs of defense that Lloyds was liable to pay. As stated in *American Surety Co. of N.Y. v. Canal Ins. Co.*, 258 F.2d 934, 'loss should not fall irrecovably upon that insurer which first recognizes its obligations, while one neglectful of its duty is allowed to escape.' We agree."

Consequently, we hold that Aetna was entitled to recover the attorney's fees incurred, and the damages paid at least up to the extent of Coronet's policy limit.

We note that in *New Amsterdam*, the amount of damages at issue were within the policy limit of the insurance company which had primary liability. In the case at bar, however, the settlement amounted to $35,000 while Coronet's policy limit was $30,000. We must therefore next determine whether Aetna, as subrogee to the rights of Hogie, was entitled to recover the excess $5,000.

■■ Aetna, in contending that it was entitled to recover the excess, cites no Illinois case directly on point on this issue nor have we found any. Aetna first relies on the principle stated in 7 Am. Jur. 2d *Automobile Insurance* §167 (1963), as follows:

> "The first and most obvious of these positive obligations created by an insurer's unjustified refusal to defend is its obligation to pay the amount of the judgment rendered against the insured or of any settlement made by the insured of the action brought against him by the injured party."

But we note that this section of the text continues as follows:

> "However, this obligation of the insurer to pay the amount of judgment or settlement is not unlimited. It does not render the

insurer liable for more than the amount of the policy limit * * *."
(See also 49 A.L.R. 2d 694, 720, §11 (1956).) Citing *Smiley v. Manchester Insurance and Indemnity Co.*, 13 Ill. App. 3d 809, 301 N.E.2d 19, Aetna argues that because Coronet's failure to defend involved gross negligence and bad faith, Coronet may nonetheless be held liable for the entire settlement despite Coronet's policy limit. In *Smiley* the court stated:

> "An insurance company may so conduct itself as to be liable for an entire judgment recovered against its insured, irrespective of its policy limits. Conduct constituting fraud, negligence, or bad faith may render the insurer so liable for its failure to settle a case." 13 Ill. App. 3d 809. 812, 301 N.E.2d 19, 21.

This case involved the familiar problem of an insurance company's refusal to settle within policy limits, and then losing the trial with a resulting judgment in excess of the policy limits. The decisive factor in *Smiley* extending liability beyond policy limits was not the insurance company's refusal to defend, but its fraudulent, negligent or bad faith refusal to accept an offer of settlement within policy limits which directly results in monetary damage to the insured, that is, the amount of the resulting judgment in excess of the policy limit. However, the facts of the case at bar are in an entirely different posture. Here we do not deal with a refusal by Coronet to settle causing a larger judgment, but with a refusal by Coronet to defend causing Aetna to provide the defense of Hogie. Clearly Coronet's failure to defend did not result in the excess $5,000 of the ultimate settlement. The settlement, instead, was the result of negotiation conducted by Aetna. Under its policy contract Aetna was obligated to Hogie to defend and was liable for the amount in excess of Coronet's policy limit. Aetna, by negotiating a settlement, satisfied its own duty to defend and it furthered its own interests as an excess insurer. Had Coronet negotiated the same settlement, Aetna's policy with Hogie would have made it liable for the $5,000 excess. The purpose of a duty to defend an insured is to protect the insured from the expenses of the litigation as well as the liabilities for which he could be held. In this respect Hogie remained unaffected by whether the settlement was negotiated by Coronet or Aetna. Aetna's duty to defend Hogie operated as a shield for the protection of Hogie and it should not now be used as a sword to impose liability on Coronet where none otherwise exists. (See *Farmers Elevator Mutual Insurance Co. v. American Mutual Liability Insurance Co.* (1969), 185 Neb. 4, 173 N.W.2d 378.) Coronet, by its unjustified failure to defend, was estopped from raising the exclusionary defenses and it became liable for the amount it would have been required to pay if it had performed its contract. (*Kinnan v. Charles B. Hurst Co.*, 317 Ill. 251, 148 N.E.12.) We see no reason why Aetna, as subrogee of Hogie's

rights, should avoid its liability and collect a windfall profit simply because it satisfied its obligations to Hogie under its policy contract. Consequently, we hold that Aetna is not entitled to recover the excess $5,000 from Coronet.

For the foregoing reasons, we affirm the judgment of the circuit court of Jefferson County.

Affirmed.

KARNS and JONES, JJ., concur.