ASSOCIATED INDEMNITY COMPANY, Plaintiff-Appellant, *v.* INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellee.—(WILSON DRIVEAWAY, INC., *et al.*, Defendants.)

First District (4th Division)   No. 76-1280

Opinion filed February 1, 1979.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (John L. Kirkland and Stanley J. Davidson, of counsel), for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Peter J. Mone, and Charles B. Lewis, of counsel), for appellee.

Mr. JUSTICE LINN delivered the opinion of the court:

Associated Indemnity Corporation (Associated) filed a complaint in the circuit court of Cook County for declaratory judgment against Insurance Company of North America (INA). Associated requested: (1) a finding that INA unjustifiably refused to conduct Robert Blond's defense in an underlying personal injury action; (2) an order that INA reimburse Associated for the expenses Associated has incurred in defending Blond to date; and (3) an adjudication that INA's insurance policy provides Blond primary coverage for an automobile accident which serves as the basis for the underlying personal injury litigation.

In granting INA summary judgment, the trial court rejected Associated's contention that INA had a duty to conduct Blond's defense in the underlying litigation. The trial court held that because Blond was acting as an independent contractor at the time of the accident he was excluded from coverage under INA's insurance policy. Associated appeals, contending: (1) that the trial court erred as a matter of law; and (2) that there are unresolved material questions of fact precluding the entry of summary judgment.

The pertinent facts disclose that in 1972, Wilson Driveway, Inc. (Wilson), was an Illinois corporation operating out of the City of Chicago. Wilson offered a service whereby it would hire individuals to pick up a customer's automobile in the Chicago area and drive it, pursuant to the customer's request, to any location in the United States. Wilson's customers included out-of-State automobile dealerships whose brokers occasionally travelled to the Chicago area, and purchased automobiles for them from used car lots and car auctions. Following such a purchase, the broker would call Wilson and request that the automobile be picked up and driven to the out-of-State dealer.

Wilson did not employ any full-time automobile drivers; rather, it advertised for drivers on a car by car basis. The driver selected by Wilson and the customer who owned the particular automobile involved would enter into a form contract entitled an "Owner-Driver Agreement." A copy of this contract is not part of the record on appeal. While it appears from the record that such an agreement was utilized in all cases, the record is unclear as to who possessed the authority to execute these contracts on behalf of out-of-State customers.

The driver would pay Wilson a certain sum for the right to deliver the automobile to the out-of-State customer. The customer would generally reimburse the driver that amount upon the automobile's delivery. The driver was not paid any wages by Wilson; rather, his compensation was his right to use the customer's automobile for transportation to the customer's location.

Before Wilson would ship an automobile, it had to be inspected and a "Condition Report" filled out. If the automobile failed to meet specified standards it would not be shipped. Wilson was authorized to have minor repairs made to the automobile without consulting the customer. Minor repairs were those costing less than $25. More costly repairs required that the customer be contacted and his permission obtained.

Wilson and the driver it selected would calculate the number of miles the driver would be allowed in delivering the automobile, and determine the route that would be taken. If the driver desired to change the selected route after leaving Chicago, he had to call Wilson and request approval. In his contract with the customer, the driver was authorized to have

repairs costing less than $25 made along the route. More expensive repairs required the customer's express permission.

Robinson was an automobile dealership[1] operating out of Renton, Washington. Sometime in early 1972, Mr. Van Palmer, a Washington based automobile broker, flew to Chicago and purchased for Robinson, at an automobile auction, a Ford Club Wagon. Palmer called Wilson and requested that the automobile be picked up and delivered to Robinson.

The automobile was picked up and driven to Wilson's downtown parking lot. On April 28, 1972, Robert Blond, Wilson's downtown office manager, and Fred Abrahamson, another Wilson office manager who was also Wilson's corporate secretary-treasurer, used Robinson's automobile to conduct some local business for Wilson. Their use of the automobile had nothing whatsoever to do with the automobile's delivery to Robinson.

Blond and Abrahamson intended to drive to the Chicago offices of a Wilson customer, Pan American Auto (American). The trip's purpose was two-fold: (1) to deliver transit stickers to American for use on automobiles they shipped through Wilson; and (2) to introduce Blond to a high-level American employee. Blond and Abrahamson planned to spend most of the afternoon at American and then return to Wilson's downtown office from where they would then head home. While on route to American, Blond, the driver of the automobile, struck a pedestrian, Marilyn Bartunek. The accident occurred at a downtown Chicago intersection.

Blond has a $100,000 individual automobile liability insurance policy issued by Associated. According to "PART I" of that policy, Blond is insured whenever driving a nonowned automobile so long as his operation of the automobile "is with the permission, or reasonably believed to be with the permission, of the owner." Associated admits that Blond's operation of Robinson's automobile falls within the scope of this clause and, therefore, that Associated's insurance policy affords Blond coverage for the accident.

Associated's policy provides that it will pay all sums which Blond becomes legally obligated to pay as a result of personal injuries caused by his use of a nonowned automobile. Also, Associated shall defend Blond against any suit which alleges such bodily injury and which seeks damages payable under terms of the policy, even though the allegations of the suit are "groundless, false or fraudulent." Finally, paragraph 16 of the section of the policy entitled "Conditions," provides that coverage with respect to a nonowned automobile is excess coverage over any other valid and collectible insurance.

Wilson, the employer of Blond, is insured under a liability policy

---

[1] While we can find no specific statement in the briefs disclosing the nature of the business engaged in by Robinson, it is a fair inference from the record that Robinson is an automobile sales agency.

issued by Casualty Insurance Company. The parties agree that this policy and the coverages it affords are not relevant to the issues raised in this appeal.

Robinson is insured under a "Multiple Liability Policy" issued by INA. This policy includes a "Garage Insurance" section which provides that INA

> "* * * will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of
>
> G. bodily injury
>
> * * *
>
> to which this insurance applies, caused by an occurrence and arising out of garage operations, including only the automobile hazard for which insurance is afforded as indicated in the Declarations, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury * * *, even if any of the allegations of the suit are groundless, false or fraudulent, * * *.
>
> * * *

## VII. ADDITIONAL DEFINITIONS

> * * *

Automobile Hazard 1.
(1) The ownership, maintenance or use * * * of any automobile for the purpose of garage operations, and (2) the occasional use for other business purposes and the use for non-business purposes of any automobile owned by or in charge of the Named Insured and used principally in garage operations, and (3) the ownership, maintenance or use of any automobile owned by the Named Insured while furnished for the use of any person.

> * * *

'garage' means an automobile sales agency * * *;
'garage operations' means the ownership, maintenance or use of the premises for the purposes of a garage and all operations necessary or incidental thereto; * * *.

> * * *

## IV. PERSONS INSURED

> * * *

Under the Garage Bodily Injury and Property Damage Liability Coverages:

> * * *

(3) with respect to the automobile hazard:
> (a) any person while using with the permission of the Named Insured, any automobile to which the insurance

applies under the automobile hazard, provided his actual operation or * * * use thereof is within the scope of such permission * * *."

INA's insurance policy also contains an "independent contractor" exclusion clause:

"None of the following is an Insured:

* * *

(ii) any person or organization * * *, with respect to operations performed by independent contractors for the Named Insured;"

and an escape clause:

"1. If there is other valid and collectible insurance, whether primary, excess or contingent, available to the garage customer and the limits of such insurance are sufficient to pay damages up to the amount of the applicable financial responsibility limit, no damages are collectible under this policy.

2. If there is other valid and collectible insurance available to the garage customer, whether primary, excess or contingent, and the limits of such insurance are insufficient to pay damages up to the amount of the applicable financial responsibility limit, then this insurance shall apply to the excess of damages up to such limit.

3. If there is no other valid and collectible insurance, whether primary, excess or contingent, available to the garage customer, this insurance shall apply but the amount of damages payable under this policy shall not exceed the applicable financial responsibility limit.

* * *

'garage customer' means any person other than

(1) an employee, director, stockholder, partner or member of the Named Insured or a resident of the same household as the Named Insured, * * *."

Blond gave Associated notice that he was involved in an accident while driving Robinson's automobile. Believing that Robinson's insurer afforded Blond primary coverage for the accident and that it, Associated, afforded Blond only excess coverage, Associated wrote Robinson on August 9, 1972, advising it of the accident and suggesting that Robinson in turn notify its insurance carrier. There was no response.

On December 8, 1972, Ms. Bartunek filed suit against Blond, Wilson and Robinson seeking recovery in the amount of $750,000 for personal injuries she sustained as a result of the accident. Blond requested that Associated defend him.

On January 25, 1973, Associated wrote Robinson's insurer, INA, advising them of the accident and lawsuit. The letter contained a copy of

the complaint filed by Ms. Bartunek. Associated demanded that INA conduct Blond's defense claiming INA provided Blond primary coverage for the accident and Associated only excess coverage. There was no response. On March 8 and 29 Associated sent INA two follow up letters which also went unanswered. Meanwhile, Associated undertook Blond's defense.

On December 11, 1973, Associated wrote a fourth letter to INA asking if there was a coverage question and again demanded that INA conduct Blond's defense in the Bartunek litigation. Again there was no response. Finally, on June 24, 1974, INA sent Associated a letter denying that Blond was afforded coverage under its insurance policy with Robinson. INA cited the policy's escape clause in support of its position.

■■ On October 17, 1974, Robinson, who was being defended by INA, filed a motion for summary judgment in the Bartunek litigation.[2] The motion was based on two grounds: (1) that Blond was acting as independent contractor on the day of the accident and therefore Robinson was not liable for his negligence; and (2) that if Blond was Robinson's agent, Robinson was still not liable for Blond's negligence because Blond was acting outside the scope of his authority.

On May 29, 1975, the trial court granted Robinson summary judgment. The order simply states: "[T]he motion of defendant Robinson Lyon Ford, Inc. be and hereby is granted. * * * It is further ordered that this cause is to continue as to the other defendants." The order does not disclose which of Robinson's two arguments prevailed. Additionally, the order is nonfinal and is still not currently appealable pursuant to Supreme Court Rule 304(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 304(a)). The order can therefore be reconsidered by the trial court in the underlying litigation and revised at any time before the entry of judgment adjudicating all the claims, rights and liabilities of all the parties. Ill. Rev. Stat. 1977, ch. 110A, par. 304(a).

While Robinson's motion for summary judgment was pending in the Bartunek litigation, Associated filed this suit for declaratory judgment. Following the award of summary judgment to Robinson in the Bartunek lawsuit, INA filed a motion for summary judgment in this declaratory judgment action. Citing the escape clause and, for the first time, the independent contractor clause, INA contended that its insurance policy with Robinson did not afford Blond coverage for the accident. INA concluded that this was a complete defense to Associated's declaratory judgment action. Following a hearing and after considering the briefs and

---

[2] We have taken judicial notice of Robinson's summary judgment motion and the subsequent order entered thereon, both documents having been filed in the underlying Bartunek lawsuit. (See *Badger Mutual Insurance Co. v. Murry* (1977), 54 Ill. App. 3d 459, 370 N.E.2d 295.) While both parties refer to these documents in their briefs, they are not part of the record on appeal.

pleadings of the parties, the trial court here entered summary judgment on behalf of INA. Associated has taken this appeal.

Ms. Bartunek's lawsuit, which underlies this declaratory judgment proceeding, has been stayed pending the resolution of this appeal.

OPINION[3]

I

■■ This is an action by Associated in subrogation of Blond's rights under INA's insurance policy. (See *New Amsterdam Casualty Co. v. Certain Underwriters At Lloyds, London* (1966), 34 Ill. 2d 424, 216 N.E.2d 665.) Associated initially contends the trial court erred as a matter of law in finding: (1) that INA was not obligated to conduct Blond's defense in the underlying litigation; and (2) that INA was not obligated to reimburse Associated for the litigation expenses Associated has incurred in defending Blond to date.

We find that when Blond's defense was tendered to INA by Associated, the potentiality of coverage did exist and, therefore, INA was obligated to furnish Blond with a defense to the underlying litigation. Although INA was not obligated or permitted to conduct Blond's defense itself (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335), it was required to reimburse Blond for the costs of his defense. Consequently, we find that INA must reimburse Associated, Blond's subrogee and excess insurer, for the litigation expenses Associated had incurred in defending Blond to date.

■■ A liability insurer is obligated to defend an action brought against a putative insured if the complaint sets forth allegations that bring the claim within or potentially within the coverage of the insurance policy. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24;

---

[3] It appears from the record that under our conflict of law rules (see *Harris v. American Surety Co.* (1939), 372 Ill. 361, 24 N.E.2d 42; *Cook Associates, Inc. v. Colonial Broach & Machine Co.* (1973), 14 Ill. App. 3d 965, 304 N.E.2d 27) the interpretation and construction of the insurance contract issued by INA to Robinson might properly be controlled by Washington law. Chapter 51 of the Illinois Revised Statutes, which is patterned after the 1936 Uniform Judicial Notice of Foreign Law Act (9A Uniform Laws Annot. 553-70 (1965)), provides that Illinois courts shall take judicial notice of the laws of every other State (Ill. Rev. Stat. 1977, ch. 51, pars. 48a, 48b). While formal proof of such laws is not, therefore, required, it is still necessary, in order for a litigant to invoke the benefits of a sister State's law, that he give notice of his intention, in the pleadings or otherwise, to the trial and appellate courts and to the other party litigant. (Ill. Rev. Stat. 1977, ch. 51, par. 48j.) Since the record is not entirely clear as to whether Washington law applies to INA's policy, and since both parties have proceeded throughout this litigation on the assumption that the interpretation and construction of INA's policy is controlled by Illinois law, it would be inappropriate for us to take judicial notice of Washington law and apply it *sua sponte*. (See *O'Brien v. Rautenbush* (1956), 10 Ill. 2d 167, 139 N.E.2d 222, *overruled on other grounds in Rylander v. Chicago Short Line Ry. Co.* (1959), 17 Ill. 2d 618, 161 N.E.2d 812; Annot., *Uniform Judicial Notice of Foreign Law Act*, 23 A.L.R.2d 1437, §§10, 13 (1952).) Consequently, Illinois law governs the interpretation and construction of INA's insurance policy as well as the resolution of this appeal. Annot., 23 A.L.R.2d 1437, §13 (1952).

*Aetna Casualty & Surety Co. v. Coronet Insurance Co.* (1976), 44 Ill. App. 3d 744, 358 N.E.2d 914.) The insurer has obligated itself to defend such an action even though the allegations of the complaint are "groundless, false or fraudulent." Consequently, its duty to defend is not diminished by the knowledge of extraneous facts which indicate or even demonstrate that the claim alleged in the complaint is, in fact, not covered. As the court stated in *Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184, 193, 193 N.E.2d 123, 127, quoting *Brooklyn & Queens Allied Oil Burner Service Co. v. Security Mutual Insurance Co.* (1960), 27 Misc. 2d 401, 404, 208 N.Y.S. 2d 259, 261:

> "The fact that the insurer is possessed of information, whether obtained from its insured or from other sources, which may show the claim against the insured * * * [is] outside the coverage of the policy is, in this regard, of no consequence. [Citations.]" See Annot., *Allegations in third person's action against insured as determining liability insurer's duty to defend*, 50 A.L.R. 2d 458 (1956).

In the converse situation, even though the complaint, standing alone, may not fairly apprise the insurer that the third party is suing the putative insured on an occurrence potentially within the policy's coverage, the insurer is obligated to conduct the putative insured's defense if the insurer has knowledge of true but unpleaded facts, which, when taken together with the complaint's allegations, indicate that the claim is within or potentially within the policy's coverage. While no Illinois court to our knowledge has yet had occasion to consider this latter principle[4], it has been recognized by other jurisdictions. (7A.Appleman on Insurance §4683 (Supp. 1978); see, *e.g.*, *Evan v. Employers Mutual Liability Insurance Co.* (D. Alas. 1975), 391 F. Supp. 1230 (applying Alaska law); *Smith v. Travelers Indemnity Co.* (1973), 32 Cal. App. 1010, 108 Cal. Rptr. 643; *New Hampshire Insurance Co. v. Christy* (Iowa 1972), 200 N.W.2d 834; *Kangas v. Aetna Casualty & Surety Co.* (1975), 64 Mich. App. 1, 235 N.W.2d 42; *Hagen Supply Corp. v. Iowa National Mutual Insurance Co.* (8th Cir. 1964), 331 F.2d 199 (applying Minnesota law); *Marshall's U.S. Auto Supply, Inc. v. Maryland Casualty Co.* (1945), 354 Mo. 455, 189 S.W.2d 529 (1945); *Sucrest Corp. v. Fisher Governor Co.* (1975), 83 Misc.2d 394, 371 N.Y.S.2d 927.) To hold otherwise would allow the insurer to construct a formal fortress of the third party's pleadings and to retreat behind its walls, thereby successfully ignoring true but unpleaded

---

[4] But see *Sherman v. Home Insurance Co.* (1975), 25 Ill. App. 3d 519, 323 N.E.2d 550. *Sherman* suggests that under Illinois law, an insurance company need never consider known facts extraneous to the complaint in determining whether it has a duty to defend. *Sherman* cites no case so holding but rather deduces this proposition from a misinterpretation of Illinois law. In any event, *Sherman* is distinguishable on its facts and we do not find it persuasive in this case.

facts within its knowledge that require it, under the insurance policy, to conduct the putative insured's defense.[5]

Predictably, INA claims that our extension of the duty to defend rule will have "disastrous consequences" on the insurance industry. INA reasons that insurance carriers will have to conduct their own independent investigation of facts extraneous to each complaint filed against a putative insured, "even though the complaint [itself] fails to apprise the insurer that the third party is suing the putative insured on an occurrence potentially within the policy's coverage." We disagree with INA's disaster scenario.

We do not even reach the issue of when, if ever, an insurance carrier is obligated to conduct an independent investigation of the facts underlying a complaint filed against a putative insured. All we hold is that an insurance carrier may not ignore *unpleaded facts within its knowledge, which it knows to be correct*, and which, when taken together with the complaint's allegations, indicate that *the claim asserted* against the putative insured is potentially within the coverage of the insurance policy.

■■ Of course, if the complaint contains allegations which if true would exclude coverage under the policy, the insurer has no obligation to defend. (*Sheppard, Morgan & Schwaab, Inc. v. United States Fidelity & Guaranty Co.* (1976), 44 Ill. App. 3d 481, 358 N.E.2d 305.) It is important to recognize, however, that if an exclusionary clause is relied upon to deny coverage, its applicability must be clear and free from doubt at the time the insurer is requested to tender a defense. See *Shaw v. Aetna Casualty & Surety Co.* (7th Cir. 1969), 407 F.2d 813.

In determining whether INA had a duty to undertake Blond's defense when requested to do so by Associated, we look in the first instance to the third party's (Ms. Bartunek's) complaint and to the relevant terms of INA's insurance policy.

The pertinent provisions of the policy provide that INA will defend an insured against any suit which seeks damages for bodily injuries,

---

[5] In determining whether an insurer has a duty to defend, some of the jurisdictions cited above consider not only unpleaded facts which were brought to the insurer's attention and which the insurer knew to be correct, but also unpleaded facts which the insurer could have discovered through a reasonable investigation. We express no opinion as to when, if ever, an insurer would be obligated to make a reasonable investigation of the facts underlying the complaint. (See 7 Williston, *Contracts* §914, at 430-31 (3d ed. Jaeger 1963); *The Insurer's Duty to Defend Under A Liability Insurance Policy*, 114 Penn. L. Rev. 734, 752-59 (1966).) Nor do we have a situation here where the insurer was informed of certain "alleged" extraneous facts by, *e.g.*, the insured, which the insurer had no way of knowing were in fact correct. To hold the insurer to such facts would amount to a requirement of a reasonable investigation, since the insurer could not reasonably rely on what it was told the "actual" facts were and yet if it did nothing, and the facts proved to be correct, it would be open to possible liability for refusing to tender a defense. Finally, we do not have a situation here where the facts brought to the insurer's attention conflicted with those facts alleged in the complaint.

provided the injuries arise "out of garage operations, *including* only the automobile hazard for which insurance is afforded * * *." (Emphasis added.) This clause is ambiguous and is susceptible to more than one interpretation. First, it may be read as establishing two conditions for coverage where the bodily injuries are incurred in an automobile accident—namely, the injuries must arise out of both "garage operations" and the defined "automobile hazard." The clause can also be read, however, to mean that bodily injuries incurred in an automobile accident need only arise out of the policy's defined "automobile hazard" in order for there to be coverage. As an insurance policy's ambiguity is ordinarily to be resolved in favor of coverage (*Grahame v. Mitchell* (1975), 28 Ill. App. 3d 334, 329 N.E.2d 17), we adopt the latter interpretation. INA, the drafter of the policy, implicitly adheres to the second interpretation in its argument on this appeal.

"Garage operations" include all operations necessary or incident to Robinson's business as an automobile sales agency. "Automobile hazard" is defined as:

"(1) The ownership, maintenance or use * * * of any automobile for the purpose of garage operations, and (2) the occasional use for other business purposes and the use for non-business purposes of any automobile owned by or in charge of the Named Insured and used principally in garage operations, and (3) the ownership, maintenance or use of any automobile owned by the Named Insured while furnished for the use of any person."

Finally, the policy's omnibus clause defines an insured as "any person while using, with the permission of [Robinson] the Named Insured any automobile to which this insurance applies * * *."

The complaint filed by Ms. Bartunek contains numerous counts. Counts I and II are directed against Blond and contain several allegations that he wilfully and negligently drove a motor vehicle "so that it violently collided with the body of the plaintiff Marilyn Bartunek." Standing alone, counts I and II might not have been sufficient to put INA on notice that the claim alleged against Blond was potentially within the coverage of INA's insurance policy and that INA had a duty to defend Blond. However, we need not reach that question because we find it is not dispositive.

INA knew that true but unpleaded facts raised the reasonable possibility that Ms. Bartunek's complaint against Blond was potentially within the coverage of its policy. Associated notified INA as early as January 25, 1973, that the automobile Blond was driving at the time of the accident was owned by Robinson and that the automobile had been in the possession of Wilson, Blond's employer, for the purpose of having it delivered to Robinson. INA knew these facts to be true since it was

defending Robinson in the Bartunek lawsuit. Further, the record indicates INA had opened a file on Blond's accident in January of 1973. This file contained several documents produced in the Bartunek litigation which also verified the truth of the facts related by Associated.

■■ These unpleaded facts should have apprised INA that the claim against Blond potentially fell within its policy's defined scope of coverage. These facts indicated: (1) that pursuant to Illinois' initial permission rule,[6] Blond was operating Robinson's automobile with Robinson's permission and therefore fell within the definition of an "insured" in the omnibus clause of INA's insurance policy; and (2) that there existed the possibility that Ms. Bartunek's bodily injuries, which resulted from Blond's permissive operation of Robinson's automobile, arose out of an "automobile hazard" as that term is defined in INA's policy.

■■ INA does not dispute this. It contends, rather, that Blond was removed from coverage by means of an exclusionary clause in its insurance policy. INA initially raised in the trial court the policy's "escape" clause, claiming that it denied Blond coverage. However, INA has not raised or argued the "escape" clause on this appeal and has therefore waived that contention. Ill. Rev. Stat. 1977, ch. 110A, pars. 341(e)(7), 341(f); *Prather v. Lockwood* (1974), 19 Ill. App. 3d 146, 310 N.E.2d 815; *Werdell v. Turzynski* (1970), 128 Ill. App. 2d 139, 262 N.E.2d 833.

■■ Even aside from the waiver principle, the contention is without merit. Associated's policy contains a standard "excess" clause. In reconciling these two clauses, Associated's "excess" clause prevails over INA's "escape" clause. As the court stated in *International Insurance Co. v. Sentry Insurance* (1977), 45 Ill. App. 3d 634, 636, 359 N.E.2d 1219, 1221, *appeal denied* (1977), 66 Ill. 2d 626, when faced with a similar conflict:

> "It is clearly the law of Illinois that where the owner [of the automobile] has a policy with an omnibus clause covering the driver and [also] an 'escape' clause while the driver's insurance provides 'excess' coverage, the 'excess' clause prevails and the owner's insurer is primarily liable. [Citation.]" See also *Automobile Underwriters, Inc. v. Hardware Mutual Casualty Co.* (1971), 49 Ill. 2d 108, 273 N.E.2d 360.

Recognizing this authority, INA, on this appeal, has placed sole reliance upon the policy's "independent contractor" exclusion clause which has been set out above. INA argues that Blond was acting as an

---

[6] Illinois has long followed the rule that if the named insured has initially given permission to another to use the insured vehicle, a deviation from the authorized use does not serve to terminate the permission." *Maryland Casualty Co. v. Iowa National Mutual Insurance Co.* (1973), 54 Ill. 2d 333, 341, 297 N.E.2d 163, 167.

independent contractor at the time of the accident and was excluded from coverage under this clause. INA therefore concludes that it had no duty to defend Blond.

■■ However, at the time INA was tendered Blond's defense, there was some uncertainty as to the precise relationship between Robinson and Wilson, Blond's employer,[7] and also serious doubt as to whether Wilson, and more importantly Blond, were independent contractors or agents of Robinson. INA's own conduct exemplifies this. INA did not raise the independent contractor clause defense until *after* this declaratory judgment action was filed by Associated and *after* the trial court in the underlying Bartunek litigation had occasion to consider Blond's status at the time of the accident.

We find that when Blond's defense was tendered to INA by Associated the potentiality of coverage under INA's insurance policy did exist, and, therefore, INA was obligated to furnish Blond with a defense to the underlying litigation. We recognize, however, that a serious conflict of interest would have arisen had INA itself conducted that defense.

INA already represented Robinson, its named insured under the same insurance policy, in the underlying personal injury suit. In seeking to recover against Robinson, Ms. Bartunek has alleged in her complaint that Blond was acting as Robinson's agent and servant at the time of the accident. If Blond is found liable in the underlying personal injury action, it would be to his interest to be classified as Robinson's agent because this would shift Blond's financial loss to INA, under INA's policy of insurance. This agency finding could also establish the basis for Ms. Bartunek's *respondeat superior* claim against Robinson, and thereby expose INA to further liability under its policy.

On the other hand, it would be to INA's interest to have a determination that Blond was acting as an independent contractor at the time of the accident, because, under the terms of the policy, this would relieve INA of any obligation to pay a judgment rendered against Blond. Such an independent contractor finding would also defeat Ms. Bartunek's *respondeat superior* claim against Robinson, and thereby also relieve INA of that potential liability.

In *Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335, the Illinois Supreme Court discussed the problems encountered by an insurer when it is faced with an obligation to provide an insured with a defense, but the

---

[7] This relationship is still not clear. The record appears to indicate that an "Owner-Driver Agreement" was always entered into between Robinson and the persons selected by Wilson to drive Robinson's automobiles from Chicago to Renton, Washington where Robinson was located. The record does not disclose, however, who possessed the authority to execute these contracts on Robinson's behalf. Whether Wilson, Blond's employer, possessed this authority might well have an effect on Blond's status as either an independent contractor or agent for Robinson.

insurer is prevented from conducting that defense itself because of a serious conflict of interest. Suffice it to note, at this point, that our supreme court held in *Thornton* that when a conflict of interest does exist, the insurer is not obligated or even permitted to participate in the defense of the insured. Rather, the insurer is obligated to reimburse the insured for the costs of his defense.

■■ Consequently, we conclude that Associated, Blond's subrogee and excess insurer, has a right to be reimbursed by INA for all the litigation expenses Associated has incurred in defending Blond to date. (*New Amsterdam Casualty Co. v. Certain Underwriters At Lloyds, London* (1966), 34 Ill. 2d 424, 216 N.E.2d 665; *Aetna Casualty & Surety Co. v. Coronet Insurance Co.* (1976), 44 Ill. App. 3d 744, 358 N.E.2d 914; *Fireman's Fund Indemnity Co. v. Freeport Insurance Co.* (1961), 30 Ill. App. 2d 69, 173 N.E.2d 543; but see *Farmers Automobile Insurance Association v. Iowa Mutual Insurance Co.* (1966), 77 Ill. App. 2d 172, 221 N.E.2d 795.) This is true even though the underlying suit seeks recovery against Blond in excess of INA's policy limits. *Continental Casualty Co. v. American Fidelity & Casualty Co.* (7th Cir. 1960), 275 F.2d 381, approved in *New Amsterdam Casualty Co. v. Certain Underwriters At Lloyds, London* (1966), 34 Ill. 2d 424, 216 N.E.2d 665; *Fireman's Fund Indemnity Co. v. Freeport Insurance Co.* (1961), 30 Ill. App. 2d 69, 173 N.E.2d 543.

II

Associated has requested, in this declaratory judgment proceeding, an ultimate adjudication as to whether INA's insurance policy affords Blond primary coverage for the automobile accident which serves as a basis for the underlying personal injury litigation. In this regard, Associated contends that because of its refusal to defend Blond, INA is estopped from raising noncoverage as a defense to Associated's request for a declaration that INA's policy provides Blond primary coverage.

■■ As a general rule, where there is potential coverage, but the insurer believes a valid exclusionary clause may be applicable, the insurer cannot simply abandon the insured. Rather, the insurer must defend the insured under a reservation or rights, and either: (1) secure a declaratory judgment as to the question of coverage; or (2) adjudicate the issue of coverage in a supplemental suit. (*Aetna Casualty & Surety Co. v. Coronet Insurance Co.* (1976), 44 Ill. App. 3d 744, 358 N.E.2d 914.) INA did neither.

■■ ■ Numerous cases hold that when an insurance carrier refuses to defend its insured, despite the existence of potential coverage, that carrier is completely estopped from raising noncoverage as a defense in a subsequent action filed against it by the insured, or the insured's subrogee. (See, *e.g.*, *Aetna Casualty & Surety Co. v. Coronet Insurance Co.*

(1976), 44 Ill. App. 3d 744, 358 N.E.2d 914; *Fragman Construction Co. v. Preston Construction Co.* (1971), 1 Ill. App. 3d 1002, 274 N.E.2d 614; *McFadyen v. North River Insurance Co.* (1965), 62 Ill. App. 2d 164, 209 N.E.2d 833; *Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184, 193 N.E.2d 123.) For having breached its duty to defend, the insurance carrier is held liable for the insured's litigation expenses in the underlying action, and for the judgment rendered against the insured or the settlement made by him, up to the limits of its insurance policy.[8]

The estoppel principle, espoused by these cases, is equitable in nature and arises as a direct result of the insurer's wrongful refusal to honor the defense provisions of its own insurance contract. (*Cowan v. Insurance Company of North America* (1974), 22 Ill. App. 3d 883, 891 n. 2, 318 N.E.2d 315, 322 n. 2; *Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184, 193 N.E.2d 123.) As the court stated in *Sims*:

> "[T]he insurer has no right to insist that the insured [or his subrogee] be bound by the provisions of the insurance contract inuring to [the insurer's] benefit, i.e. the 'Exclusions' provisions, when [the insurer] has already breached the contract by violating the provisions inuring to the benefit of the insured, i.e., the defense provisions." 43 Ill. App. 2d 184, 197, 193 N.E.2d 123, 129.

In attempting to avoid these general principles, INA initially points out that in the line of cases cited above, the underlying action against the *insured* had already been litigated to its completion "before" the insured, or his subrogee, filed suit against the insurance carrier for its wrongful refusal to defend. In this case, on the other hand, the underlying litigation against Blond has been stayed pending the resolution of his declaratory judgment action against INA. Relying upon this factual distinction, INA claims that it should not be estopped from raising noncoverage as a defense in this proceeding.[9] We disagree.

When an insurance carrier wrongfully refuses to conduct an insured's defense, the carrier's liability, *at that time*, becomes fixed and certain

---

[8] A liability insurer, which breaches its duty to defend, is generally required to indemnify the insured up to the limits of its insurance policy. (*Reis v. Aetna Casualty & Surety Co.* (1978), ___ Ill. App. 3d ___, ___ N.E.2d ___; *Gould v. Country Mutual Casualty Co.* (1962), 37 Ill. App. 2d 265, 185 N.E.2d 603, *overruled on other grounds in Smith v. Andrews* (1964), 54 Ill. App. 2d 51, 203 N.E.2d 160; *DeGraw v. State Security Insurance Co.* (1976), 40 Ill. App. 3d 26, 351 N.E.2d 302; Annot., 49 A.L.R. 2d 694 (1956).) In certain situations, however, if an insurance carrier acts in bad faith in refusing to conduct the insured's defense, the carrier may be required to satisfy the entire judgment or settlement, irrespective of its policy limits. 7A Appleman on Insurance §4689 (Cum. Supp. 1974); but see *Aetna Casualty & Surety Co. v. Coronet Insurance Co.* (1976), 44 Ill. App. 3d 744, 358 N.E.2d 914.

[9] There are a few cases where, during the pendency of the action against the insured, a declaratory judgment proceeding (*Fireman's Fund Indemnity Co. v. Freeport Insurance Co.* (1961), 30 Ill. App. 2d 69, 173 N.E.2d 543) or a third-party complaint (*Gianinni v. Bluthart* (1971), 132 Ill. App. 2d 454, 270 N.E.2d 480) was filed against the insurer for breach of its duty to defend. A reading of *Gianinni* reveals, however, that unlike the situation

although the *amount* of its liability remained unliquidated. (*Kinnan v. Charles B. Hurst Co.* (1925), 317 Ill. 251, 260-61, 148 N.E. 12, 15-16; *Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184, 196-97, 193 N.E.2d 123, 128-29.) The insurer becomes liable, *at that time,* for whatever litigation expenses the insured incurs, as well as for any judgment rendered against the insured or settlement made by him, up to the limits of its insurance policy. Thus, when an insurance carrier refuses to honor the defense provisions of its own insurance policy, provisions which inure to the insured's benefit, the insurer becomes estopped and loses the right to insist that the exclusionary provisions of its policy deny the insured coverage.

■■ INA next contends that in view of the Illinois Supreme Court's recent decision in *Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335,[10] it is not estopped from raising noncoverage as a defense to Associated's request for a declaration that INA's insurance policy provides Blond primary coverage for the underlying litigation.

In *Thornton,* the plaintiff and several friends were drinking in Ben's Den, in Bloomington, in the early morning hours of January 1, 1973. Ben Paul, president of Ben's Den, Inc., told Thornton several times to quiet down. When Thornton persisted in scuffling with his friends, and refused to leave, Ben Paul struck him on the forehead with a wooden club, causing a severe laceration from his hairline to just above his eyebrow. On August 7, 1973, plaintiff filed a two-count complaint, charging the defendants with wilful and wanton misconduct and seeking $14,000 in compensatory and punitive damages.

At the time of the occurrence, the defendants had a liability insurance policy with Illinois Founders which provided that the company would pay all sums which the insureds became legally obligated to pay as damages, for personal injuries caused by an occurrence arising out of the ownership, maintenance or use of the insured premises, and provided further that the company would defend any such suit against the insureds. In addition to the standard policy exclusions, the policy had an appended endorsement which stated:

"EXCLUSION OF ASSAULT AND BATTERY
It is agreed that the insurance does not apply to Bodily Injury or Property Damage arising out of assault and battery or out of any

---

presented here, the underlying action against the insured was not stayed and was in fact concluded before the insured's cause of action against the insurer was adjudicated. In *Fireman's Fund,* the only case factually on point, the issue of estoppel was not raised or considered.

[10] The supreme court's decision in *Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335, was handed down during the pendency of INA's petition for rehearing. Both INA and Associated have submitted memoranda with regard to Thornton's applicability to this case.

act or omission in connection with the prevention or suppression of such assault and battery."

After receiving a copy of the complaint and a request to defend, Illinois Founders notified the defendants that it was reserving its rights. The insurer then retained counsel to investigate the incident underlying the suit. This investigation indicated that the occurrence was in fact a battery by the defendant Paul. After receiving this report, Illinois Founders notified the defendants and their personal attorney that it was denying coverage since responsibility for defense of claims arising out of assault and battery was excluded under the policy terms. Subsequently, on July 24, 1974, plaintiff's attorney, with leave of court, filed an amended complaint against the defendants alleging that while plaintiff was on the premises using ordinary care for his own safety, "Defendant negligently struck Plaintiff on the head." The amended complaint sought $30,000 in damages.

On July 29, 1974, the defendants' personal attorney demanded that Illinois Founders defend the defendants on the amended complaint. In a letter dated August 19, 1974, Illinois Founders notified defendants' attorney that it would not defend the action since its previous investigation had shown that the occurrence was outside the coverage of the policy and no new facts indicated otherwise.

On March 17, 1975, a default judgment was entered against the defendants in the amount of $30,000. Plaintiff then initiated a garnishment proceeding against the insurer, Illinois Founders, alleging that it was indebted to the defendants for the amount of the judgment plus costs. At the garnishment hearing, plaintiff's attorney argued that because the allegations of the amended complaint filed against the defendants fell within the coverage afforded by Illinois Founders' insurance policy, by failing to defend, Illinois Founders became estopped from asserting lack of coverage as a defense in the garnishment proceedings. The trial court agreed and ordered the insurer to pay plaintiff the $30,000 judgment plus costs.

On appeal, the Illinois Supreme Court reversed the circuit court's decision in the garnishment proceedings. The supreme court held that, under the facts presented by that case,

"* * * the general rule that the insurer is estopped because of its failure to defend from asserting lack of coverage in a [subsequent] garnishment proceeding does not apply. * * * Clearly, if Illinois Founders would have accepted the defense of the amended complaint, there would have been a direct conflict between its interests and those of the defendants. If Illinois Founders would have assumed the defense, it would have had the right to control the defense of the case. Its interest would not necessarily lie in a

finding of not guilty, but would have been just as well served by a finding that the defendant was guilty by virtue of having committed a battery upon the plaintiff. In *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, this court noted the serious ethical problem involved in such a situation and held that one attorney should not, in such a case, represent both the insured and the insurer, and that the insured had a right to be represented by counsel of his own choosing. The insured would then have the right to control the defense.

Although the allegations of the complaint determine whether or not the insurer is obligated to provide a defense, when there is a conflict of interests, as in the present case, the insurer should not be obligated or permitted to participate in the defense of the case. *Its obligation to provide a defense should be satisfied by reimbursing the insured for the costs of the defense.*

\* \* \*

[W]e conclude that because of the conflict of interests and the ethical problems that would have been presented if Illinois Founders would have undertaken the defense of the defendants, the insurer's failure to defend should not estop it from raising the defense of non-coverage in the garnishment action." (Emphasis added.) *Thornton v. Paul* (1978), 74 Ill. 2d 132, 151-52, 384 N.E.2d 335, 343-45.

Similarly, in this case, as we detailed previously, when Associated tendered Blond's defense to INA, a serious conflict of interest precluded INA from conducting Blond's defense. Therefore, we find that under the authority and reasoning of *Thornton,* INA's failure to defend Blond in the underlying litigation does not estop it from raising noncoverage as a defense in this declaratory judgment proceeding, with regard to Associated's request for a declaration that INA's insurance policy provides Blond primary coverage for the automobile accident.

## III

Since we have found that INA is not estopped from raising noncoverage as a defense in this proceeding, we must determine whether the trial court was correct in finding as a matter of law: (1) that Blond was acting as an independent contractor at the time of the accident; and (2) that the "independent contractor" exclusion clause of INA's policy denies Blond coverage.

■■ Initially, we find that the trial court's adjudication in this proceeding of the issue of Blond's status at the time of the accident was an improper exercise of the discretion vested in it by the declaratory judgment provision of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 57.1).

Since the issue of Blond's status is one of the ultimate facts upon which recovery is predicated in the underlying personal injury action filed by Ms. Bartunek,[11] it was improper for the trial court here to resolve that same issue in this declaratory judgment proceeding which was filed long after the underlying action was instituted. (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335; *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24; *Aetna Insurance Co. v. Janson* (1978), 60 Ill. App. 3d 957, 377 N.E.2d 296; *Allstate Insurance Co. v. Gleason* (1964), 50 Ill. App. 2d 207, 200 N.E.2d 383.) Under the principle of collateral estoppel, an adjudication of the issue of Blond's status in this declaratory judgment proceeding might well preclude Ms. Bartunek's right to pursue her claim against Robinson on the theory alleged in the underlying litigation. Furthermore, the issue of Blond's status appears to have already been adjudicated by way of summary judgment, albeit in a nonfinal fashion, in the underlying suit. Consequently, to allow the adjudication of that same issue in this proceeding, might well lead to confusion and conflicting results. Consequently, we conclude that the issue of Blond's status must await final resolution in the underlying personal injury suit.

Secondly, we agree with the trial court's holding here that *if* Blond was acting as an independent contractor on the day of the accident, the 'independent contractor' exclusion clause in INA's policy would deny him coverage.

The exclusion clause relied on by INA provides in pertinent part:
"None of the following is an Insured:

❊ ❊ ❊

(ii) any person or organization ❊ ❊ ❊ with respect to operations performed by independent contractors *for* [*Robinson*] *the Named Insured.*" (Emphasis added.)

Wilson, Blond's employer, had been given possession of an automobile to be delivered to Robinson. Assuming that Wilson and Blond were independent contractors, Associated admits that their performance of this delivery function for Robinson would have excluded them from coverage under INA's insurance policy pursuant to the above clause. In this case, however, Blond's use of Robinson's automobile at the time of the accident had nothing whatsoever to do with its delivery to Robinson. Blond was using the automobile to conduct local business for Wilson.

Associated contends that when read literally and strictly against its drafter, INA, the above clause only excludes independent contractors from coverage when they are performing an operation "for Robinson."

---

[11] In seeking to recover against Robinson in the underlying personal injury action, Ms. Bartunek has alleged in her complaint that Blond was acting as Robinson's agent and servant at the time of the accident.

Associated concludes that since Blond was conducting local business "for Wilson" at the time of the accident, the above clause does not apply.

■■ We recognize that when there is some uncertainty in the proper construction of a clause in an insurance contract it is generally construed in favor of coverage. (*Grahame v. Mitchell* (1975), 28 Ill. App. 3d 334, 329 N.E.2d 17.) This precept, however, is not as poignant in a suit where the issue to be resolved is which of two insurers affords primary coverage. (*Thomas v. Aetna Casualty & Surety Co.* (1975), 28 Ill. App. 3d 363, 328 N.E.2d 374.) Keeping in mind that the dominant principle to be adhered to in interpreting and construing any insurance contract is to ascertain and effectuate the intention of the contracting parties (*Bituminous Casualty Corp. v. North River Insurance Co.* (1977), 46 Ill. App. 3d 654, 361 N.E.2d 60), we cannot accept Associated's interpretation of the above exclusion clause.

Put simply, we believe that it would be absurd and unreasonable to read the above exclusion clause as denying coverage under INA's policy when an independent contractor is delivering an automobile to Robinson, but as not denying coverage when that same independent contractor takes it upon itself to deviate from its intended delivery function and uses Robinson's automobile for its own benefit. We feel that it was the intention of INA and Robinson, the parties to this insurance contract, to exclude an independent contractor from coverage in a situation such as is presented by this case. The risk sought to be avoided by the above exclusionary clause is the risk posed by independent contractors hired by Robinson, over whom Robinson has no control and for whom Robinson has no real reason to afford coverage.

To Summarize

(1) We direct that INA reimburse Associated for the defense costs Associated has incurred in defending Blond to date; the amount of these expenses is to be determined and assessed by the trial court below upon remand. We note that this obligation of INA's is in no way dependent upon whether it is ultimately found that INA's policy affords Blond coverage, and, more particularly, whether it is determined that Blond was acting as an agent or independent contractor at the time of the accident.

(2) We vacate the trial court's finding in this declaratory judgment proceeding that Blond was acting as an independent contractor at the time of the accident. The issue of Blond's status must await *final* adjudication by the trial court in the underlying personal injury litigation.[12]

---

[12] INA questions how this is to be accomplished since Robinson has already been granted summary judgment in the underlying litigation, and, therefore, Blond's status, at the

(3) We affirm the trial court's finding here that the exclusion clause in INA's policy would deny Blond coverage *if* he was acting as an independent contractor at the time of the accident.

(4) We find that at the present time the underlying complaint against Blond is still potentially within the coverage of INA's insurance policy. Therefore, INA remains Blond's primary insurer and is obligated to reimburse Blond for the future costs of his defense. If and when it is determined with finality, in the underlying suit, that Blond was acting as an independent contractor at the time of the accident, Blond will be denied coverage under INA's policy and, correspondingly, INA's duty to reimburse Blond for the costs of his defense will end. Associated will then become Blond's primary insurer.

(5) Finally, since INA still bears the cost of Blond's defense, and since Associated, which has defended Blond to date, is, at the present time, Blond's excess insurer and, therefore, primarily concerned with the *amount* of Blond's ultimate liability, we find that INA may reasonably require Blond to secure other independent counsel, of his own choice, with regard to his defense in the underlying litigation. This is not to say that Associated may not stay on as additional counsel for Blond, although, of course, its future litigation expenses will not be paid by INA.

Reversed in part; vacated in part; affirmed in part; and remanded for proceedings not inconsistent with this opinion.

°JOHNSON, J., concurs.

---

time of the accident, is no longer "in issue." INA, however, misses the forest because of the trees. In granting Robinson's motion for summary judgment, the trial court had to accept one of two grounds advanced in the motion: either (1) that Blond was acting as an independent contractor at the time of the accident; or (2) that Blond was acting as Robinson's agent at the time of the accident, though outside the scope of his authority. In either event, the summary judgment order adjudicated the issue of Blond's status, in a nonfinal fashion (Ill. Rev. Stat. 1977, ch. 110A, par. 304(a); *Highway Industries, Inc. v. Trailer Leasing Co.* (1977), 48 Ill. App. 3d 235, 363 N.E.2d 60). The problem encountered is that the summary judgment order does not reveal *which* of the two grounds prevailed. This problem can easily be rectified. It would be a simple matter for either INA, as Robinson's attorney, or Blond to request that the trial court, in the underlying suit, clarify the basis for its summary judgment order. We see no hurdle to acquiring such a clarification since the trial court may reconsider and/or revise its nonfinal order at any time prior to the entry of judgment adjudicating all the claims, rights and liabilities of all the parties. (Ill. Rev. Stat. 1977, ch. 110A, par. 304(a).) After all, "[e]veryone is entitled to know *why* a court does what it does ° ° °." *Hoult v. Kuhne-Simmons Co.* (1978), 64 Ill. App. 3d 476, 478, 381 N.E.2d 403, 404.

° Justice Dieringer, who concurred in the prior opinion rendered in this case, has since retired and could not, therefore, participate in this later opinion entered on the grant of INA's petition for rehearing.