200 N.J. Super. 201 (1985)
491 A.2d 23
JOHN ROONEY, PLAINTIFF,
v.
TOWNSHIP OF WEST ORANGE, DEFENDANT-APPELLANT, AND WEST ORANGE BOARD OF EDUCATION, DEFENDANT-RESPONDENT, AND WILLIAM CECERE, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued March 26, 1985.
Decided April 10, 1985.
*203 Before Judges PRESSLER, BRODY and COHEN.
Hal D. Pugach argued the cause for appellant (Paul Seligman, attorney; Paul T. von Nessi, of counsel and on the brief).
Richard J. Hill argued the cause for respondent (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys; Michael J. Frank, on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Defendants Township of West Orange (Township) and its employee William Cecere appeal from an order dismissing their claim for the provision of a defense and indemnification by codefendant West Orange Board of Education (Board). The issue before us involves the right of an excess insurer to reimbursement of its legal expenses where it has defended its insured even though the recovery sought against the insured was within the coverage of the primary insurer.
The underlying litigation arose out of an accident which took place when a school bus owned by the Board struck a parked vehicle owned by plaintiff John Rooney. It is not disputed that at the time of the accident the bus had been lent by the Board *204 to the Township for Township business. The driver of the bus, Cecere, who had parked it on a hill, was standing outside the bus, presumably awaiting his passengers. The empty bus began to roll down the hill and struck several cars, one of which was plaintiff's. Plaintiff instituted this action in July 1982 against Cecere, the Township, and the Board, seeking to recover $3,000 for his property damage.
Cecere and the Township were provided with a defense by the Township's liability carrier. Their answer included several cross-claims against the Board, none of which raised the issue here presented. The matter proceeded unexceptionally for about a year. In July 1983 plaintiff moved for summary judgment against all defendants. The Township responded by a cross-motion against the Board seeking an order requiring the Board to assume its defense. The certification of the Township's attorney, filed in support of this request for relief, stated simply that the Board was a self-insurer obligated to provide omnibus coverage and hence that it, the Township, was the Board's insured, entitled to both a defense and indemnification.
In response to plaintiff's motion, the Board conceded that it was not opposing plaintiff's motion for summary judgment in respect of the liability issue, but was only contesting damages since the car had been stolen after it was struck by the bus and the Board believed that some portion of the damage might have been caused by the thief. In response to the Township's cross-motion, the Board admitted that the Township and its employee were its insureds under the omnibus coverage it was obliged to afford as a self-insurer. It also admitted that its coverage was primary. It resisted the motion solely on the ground that the Township's own insurer was also obliged to defend as indeed it was doing. The Board, moreover, stipulated that if there were a judgment against the Township or Cecere or both, it would be obliged to contribute equally with the Township's carrier to the payment thereof. There is thus no question that as of this point in the litigation, the Board, as self-insurer, had assumed that the Township's coverage was *205 also primary, and there is nothing in this record to suggest that as of that time it had any reason to believe otherwise. If it had been correct in this understanding, its legal position would have been correct as well since each primary insurer is obliged to afford a defense and both must contribute to the satisfaction of the insured's indemnification rights. See Child's v. New Jersey Manufacturers Insurance Company, 199 N.J. Super. 441 (App. Div. 1985). In any event, the Township's motion for a defense and indemnification was denied after it appeared at oral argument that none of the parties could represent to the court the terms of the applicable provisions of the Township's policy.
In November 1983, the Township again moved for a summary judgment requiring the Board to indemnify and defend it. This time it supported the motion with a certification asserting, for the first time, that its insurance afforded only excess coverage on this risk. The Township was apparently correct in this belated discovery since its policy provides that the coverage would be excess only in respect of non-owned automobiles. The Township's contention, therefore, was that since the risk exposure was unequivocally within the Board's primary coverage, it, the Township, did not have a contractual right to either a defense or indemnity from its own insurer. The trial judge, however, denied the Township's renewed motion on the theory that some fact might emerge at trial which would demonstrate that Cecere had committed a willful tort not covered by the Board's omnibus obligation and hence that the Township's coverage might be sole and primary. Several months later, in February 1984, the Board settled plaintiff's claim for $700, and the action was dismissed as to all parties.
At the outset it is clear that the trial judge's hypothesis of the existence of a possible state of facts which might relieve the Board of its coverage obligations in respect of the Township's employee was a speculation hardly constituting the genuine dispute of material fact which will defeat a summary judgment motion. R. 4:46-2. After all, the Board had already conceded both its liability to plaintiff and its coverage of Cecere *206 and the Township. The issue was plain, simple and ripe for decision. It should have been decided on its merits.
With respect to the merits, the Township's claim for indemnification is moot since the Board has paid the full settlement. We need address, therefore, only its claim that it was entitled to a defense. Obviously the Township's claim is really the subrogation claim of its carrier, who seeks reimbursement for having provided its insured the defense which, it alleges, the primary carrier should have provided.
As a matter of law, a carrier is bound by its covenant to defend whenever the complaint against its insured "alleges a basis of liability within the covenant to pay." Burd v. Sussex Mutual Insurance Company, 56 N.J. 383, 388 (1970). We are satisfied that the excess carrier's covenant to defend was not invoked by the complaint filed against its insured here because it presented no possibility of an indemnifiable recovery against its insured in excess of the insured's primary coverage. The demand for relief was limited to $3,000 for property damage. Surely the excess carrier should have appreciated this fact as soon as it received the complaint from its insured. The complaint alleged that the Board was the owner of the bus. It then knew or should have known, although it took it over a year to find out, that its own coverage was excess since its insured did not own the motor vehicle involved in the accident. It should also have known that the bus was undoubtedly insured by its owner, the Board, as required by the compulsory insurance mandate of N.J.S.A. 39:6B-1 et seq. Its proper course of action would, therefore, have been to make a demand on the Board's insurer, in this case the Board itself, to provide a defense for its insured. Had the demand been made and had the Board refused to defend, the excess carrier would have been itself obliged to defend. Here it defended without having made any such prior demand.
This jurisdiction recognizes the rule that an excess or secondary carrier is entitled to reimbursement for its defense expenses from the primary carrier who "has wrongfully refused *207 to defend its assured." Tooker v. Hartford Accident and Indemnity Co., 136 N.J. Super. 572, 576 (App.Div. 1975), certif. den. 70 N.J. 137 (1976); Continental Nat. American Group v. Pluda, 115 N.J. Super. 206 (Law Div. 1971), rev'd on other grounds 119 N.J. Super. 570 (App.Div. 1972). And cf. Burd v. Sussex Mutual Insurance Company, supra, 56 N.J. at 394. This rule accords with the great weight of authority. See, e.g., American Fidelity & Cas. Co. v. United States F. & G. Co., 305 F.2d 633 (5th Cir.1962); Zurich Insurance Co. v. New Amsterdam Casualty Co., 117 Ga. App. 426, 160 S.E.2d 603 (Ga.Ct.App. 1968); Travelers Insurance Co. v. Motorists Mutual Ins. Co., 178 N.E.2d 613 (Ohio Ct. App. 1961); Western Pacific Insurance Co. v. Farmers Ins. Exch., 69 Wash.2d 11, 416 P.2d 468 (Sup.Ct. 1966). And see Annot., "Right to Subrogation, as against primary insurer, of liability insurer providing secondary insurance," 31 A.L.R.2d 1324 (1953) and later case service. And see 8A Appleman, Insurance, § 4923 at 559 (1981).
A necessary element of the accrual of the subrogation right of the secondary carrier is, however, the primary carrier's wrongful refusal to defend. The reason for this is obvious. A primary carrier's refusal to defend is ordinarily based on its disclaimer of coverage. As a consequence of the disclaimer, there may well be no primary coverage at all. Thus, until the disclaimer question is resolved, there is effectively no available primary carrier and the excess carrier is, therefore, obliged to assume the defense by reason of its own covenant to defend the insured. Moreover, the public interest as well as that of the insured is served by the excess carrier providing a defense in that circumstance. When it does so, therefore, under those circumstances, it will not be regarded as a volunteer because it has undertaken the defense by reason of its own contractual duty to defend and because the public interest is served by its undertaking of the defense. See, e.g., National Farmers U. Prop. and Cas. Co. v. Farmers Ins. Group, 14 Utah 2d 89, 377 P.2d 786 (Sup.Ct. 1963) which rejected the alleged volunteer *208 status of the excess carrier because of its obligation to defend under the terms of its policy after the primary insurer's refusal. See, in accord, Aetna Casualty & Surety Co. v. Buckeye Union Cas. Co., 157 Ohio 385, 105 N.E.2d 568 (Sup.Ct. 1952); State Farm Mut. Auto. Ins. Co. v. Foundation R. Ins. Co., 78 N.M. 359, 431 P.2d 737 (Sup.Ct.N.M. 1967); National Farmers U. Prop. and Cas. Co. v. Farmers Ins. Group, supra; Maryland Cas. Co. v. American Family Ins. Group, 199 Kan. 373, 429 P.2d 931 (Sup.Ct. 1967). Indeed, our research fails to disclose any case in which the excess carrier's subrogation claim did not rest on the predicate of a prior wrongful refusal by the primary carrier which obliged the secondary insurer to defend.
The element of a wrongful refusal to defend by the primary carrier was not present here during most of the litigation. There can obviously be no wrongful refusal until a proper request had been made and rejected. Here there was no proper request or demand made of the primary insurer for fulfillment of its obligation to defend the Township until the Township, by its November 1983 motion, finally advised the Board that its, the Township's, coverage was only excess. As we have noted, the Board never denied it was a primary insurer of the Township but believed rather that the Township's coverage was also primary. Until virtually the end of this litigation it assumed, and perfectly reasonably so, that the Township's carrier was defending under its own covenant to defend and that ultimately, both of them, as primary carriers, would contribute to the overall costs of defense and indemnification. We are satisfied, therefore, that until the Township's carrier had predicated its demand for a defense from the Board on the basis of its own excess-only coverage, it was acting as a volunteer and is not entitled to reimbursement.
We do, however, hold that once the proper demand was made, the Board was obliged to assume the defense. We have pointed out that the proper demand was made here in November 1983 and that the case was fully settled by the Board in February 1984 for $700. Long before the November 1983 motion, the *209 Board, as we have noted, had admitted liability to plaintiff as party-defendant and also had conceded, as self-insurer, that the Township was its insured. We assume therefore that any legal services rendered to the Township in the final two or three months of the duration of this simple and modest litigation could not have been a matter of any notable exertion. At least they should not have been. There is, moreover, nothing in this record to suggest that the Township even participated in the litigation after the November 1983 motion.
If it did participate, however, and if there were legal services performed on its behalf after that time, it may seek reimbursement therefor in this action by filing a notice of motion supported by a proper certification of services pursuant to R. 4:42-9(b) within 20 days from the date hereof. We note that the certification will have to prove the reasonableness of any services rendered after November 1983 in view of the Board's prior admissions and concessions.
The judgment appealed from is modified to permit defendant Township to seek reimbursement in accordance herewith. Should it fail to timely make the motion herein authorized it shall be precluded from doing so thereafter. We do not retain jurisdiction.