799 P.2d 1113

**AMERICAN GENERAL FIRE AND CASUALTY COMPANY,** Plaintiff–Appellant,

v.

**PROGRESSIVE CASUALTY COMPANY, Defendant–Appellee.**

No. 18835.

Supreme Court of New Mexico.

Oct. 16, 1990.

Sager, Curran, Sturges & Tepper, P.C., Christopher P. Bauman, Matthew P. Holt, Albuquerque, for plaintiff-appellant.

Gallagher, Casados & Mann, P.C., J.E. Casados, M. Clea Gutterson, Albuquerque, for defendant-appellee.

## OPINION

BACA, Justice.

American General Fire and Casualty Company (American General) brought suit against Progressive Casualty Company (Progressive) alleging breach of contract, violation of statute, and bad faith. At the conclusion of American General's case in chief, the district court granted Progressive's motion to dismiss, finding that Progressive had no duty to defend the insured. We reverse the judgment of the district court and remand for disposition in accordance with this opinion.

James Wade suffered from multiple sclerosis that confined him to a wheelchair. Both parties to this suit provided him insurance coverage. American General had issued a homeowner's insurance policy to Wade. The policy excluded coverage for injuries arising out of "ownership, maintenance, or use" of a motor vehicle. Progressive provided automobile insurance coverage. Wade owned a van equipped with a ramp, which allowed him to be loaded into and unloaded from the van. He was, however, unable to operate the ramp and enter or exit the vehicle without assistance. In March 1986, Jody Michael, an employee of James Wade, filed suit alleging Wade was liable for injuries suffered by Michael when she attempted to move Wade in his wheelchair onto a ramp.

American General proceeded to defend Wade in the suit based on the allegations in the complaint, which did not indicate that the injuries were incurred while Wade was disembarking from the van. During its defense, it learned that Michael's alleged injuries had been incurred while she was unloading Wade from the van. At that point, American General requested Wade to notify his automobile insurance carrier of the suit because its coverage specifically excluded injury incurred in an accident related to a motor vehicle, and Wade notified Progressive.

Progressive refused to defend Wade, despite American General's subsequent formal demand for Progressive to defend and to reimburse American General for its expenses incurred in defense. Progressive claimed that it provided no coverage for Wade in this matter, claiming general policy exclusions and relying on the policy defense that the injury did not arise out of "ownership, maintenance, or use" of the insured vehicle. The Michael law suit was subsequently settled by American General for $16,000, and the suit was dismissed. American General incurred costs in defending Wade of over $5,000. American General then brought this suit, which was dismissed based on a finding that Progressive had no duty to defend Wade because the alleged negligence did not arise out of the "ownership, maintenance, or use" of the vehicle.

Progressive's insurance policy agreement states in part:

> We will pay, on behalf of any insured person, damages, other than punitive damages, for which an **insured person** is legally liable because of **bodily injury** and **property damage** caused by accident and arising out of the ownership, maintenance **or** use of your **insured car** or **utility trailer**.

> We will defend any suit or settle any claim for these damages, as **we** think appropriate.

Several issues are raised on appeal regarding whether the negligence arose out of the "ownership, maintenance, or use" of the vehicle, making Progressive respon-

sible, and whether and to what extent Progressive had a duty to defend.

## I. THE INJURIES AROSE OUT OF USE OF THE VAN.

The injuries arose when Michael was trying to unload Wade in his wheelchair from the van. She was using a hydraulic lift, but apparently the brake on the chair was set, and she was unable to push Wade over the edge created by the ramp on the side of the van. She tried to lift the wheelchair over the edge and allegedly sustained a back injury.

█ *Sanchez v. Herrera,* 109 N.M. 155, 783 P.2d 465 (1989), is controlling on the issue before us. Progressive refers us to the law of other jurisdictions, but in the face of New Mexico precedent directly on point, we find it unnecessary to go beyond our borders to determine the applicable law.[1]

In *Sanchez* we determined that the unloading of guns in the cab of a pickup truck was "foreseeably incident to use of that vehicle." *Id.* at 157, 783 P.2d at 467. In that case we adopted the following rule to determine coverage: "whether the use made of the vehicle at the time of the accident logically flows from and is consistent with the foreseeable uses of that vehicle." *Id.* We found coverage because the use of the vehicle for hunting was foreseeable, transportation of weapons in the cab was incident to that foreseeable use, the use of the vehicle as shelter was foreseeable and incident to its use while hunting, and the loading and unloading of

---

1. Progressive's analysis is flawed in two respects. It relies on precedent from outside our jurisdiction that is based on a different statutory scheme and that applies different tests to determine whether an injury arose out of the operation and use of a vehicle. *See, e.g., Gilbertson v. State Farm Mut. Auto Ins.,* 845 F.2d 245 (10th Cir.1988) (Minnesota law requires the injury to arise out of use of the vehicle as a vehicle; vehicle must be more than mere situs—it must be an active accessory; and there must be a causal relationship between accident and vehicle); *Reynolds v. Allstate Ins. Co.,* 400 So.2d 496 (Fla.App.1981) (Florida law requires relationship between injury and use of automobile as mobile vehicle); *Waldbillig v. State Farm*

*Mut. Auto. Ins. Co.,* 321 N.W.2d 49 (Minn.1982) (Minnesota statute precludes recovery when vehicle not being used for transportation).

The second error is Progressive's focus on the van as the "mere situs" of Michael's injury and its misconstruing of *Sanchez* in this regard. *Sanchez* establishes a "reasonably foreseeable" test whereby coverage exists when the injury is causally connected to and incident to a reasonably foreseeable use. Situs per se is not the issue. By focusing on the location of the accident without analysis regarding how the situs relates (or fails to relate) to the use, Progressive turns a blind eye to the requirements of our law.

weapons in the vehicle, however unwise, was foreseeable. *Id.*

▪ Application of the principles articulated in *Sanchez* is straightforward. The immediate cause of Michael's alleged injuries was Wade's negligence in setting the brake on the wheelchair that made its normal movement difficult and caused her to attempt to lift him onto the ramp. This occurred while Michael was assisting Wade out of the van. It is foreseeable, and in fact a necessary condition, that, in using the van, Wade would have to enter into and exit from the vehicle.[2] Because Wade was confined to a wheelchair, loading and unloading him with the use of the hydraulic lift was reasonably foreseeable. Incidental to this foreseeable use was that he would need assistance—he was physically unable to do this task alone. The injury to Michael occurred while assisting Wade to disembark. The cause of the accident was reasonably connected to a use of the vehicle, and this accident was within the scope of Progressive's coverage.

## II. PROGRESSIVE'S INDEPENDENT DUTY TO DEFEND.

▪ The duty of an insurer to defend arises from the allegations on the face of the complaint or from the known but unpleaded factual basis of the claim that brings it arguably within the scope of coverage. *Albuquerque Gravel Prods. Co. v. American Employers Ins. Co.,* 282 F.2d 218 (10th Cir.1960). The duty may arise at the beginning of litigation or at some later stage if the issues are changed so as to bring the dispute within the scope of policy coverage. *Pendleton v. Pan Am. Fire & Casualty Co.,* 317 F.2d 96 (10th Cir.), *cert. denied,* 375 U.S. 905, 84 S.Ct. 196, 11 L.Ed.2d 145 (1963). It appears, therefore, that at some point in the litigation, because the alleged injuries to Michael fell within the scope of Wade's automobile insurance coverage, Progressive was obligated to defend the suit. Progressive, however, presents several alternative grounds upon which it argues that the district court's ruling should be upheld.

## A. American General was not a "Mere Volunteer" and is Entitled to Subrogation.

▪ An insurer's duty to defend arises out of the nature of the allegations in the complaint. *See Foundation Reserve Ins. Co. v. Mullenix,* 97 N.M. 618, 642 P.2d 604 (1982). On its face, the Michael's complaint appeared to implicate the American General homeowner's coverage, and American General was obligated to defend. Progressive contends that, once American General discovered the true nature of the underlying allegations, it knew that it was not obligated to defend and continued in this matter as a volunteer. *See Fireman's Fund Am. Ins. Cos. v. Phillips, Carter, Reister and Assocs.,* 89 N.M. 7, 546 P.2d 72 (Ct.App.) (subrogation generally not allowed when another's debts officiously paid), *cert. denied,* 89 N.M. 5, 546 P.2d 70 (1976). However, American General was obligated to deal with Wade as a fiduciary and was under a duty to pursue the case or settle in good faith. *See Chavez v. Chenoweth,* 89 N.M. 423, 553 P.2d 703 (Ct.App. 1976); *Allstate Ins. Co. v. Auto Driveaway Co.,* 87 N.M. 77, 529 P.2d 303 (Ct.App. 1974). Even if American General had developed a belief that the injury was beyond the scope of its coverage, its duty to Wade and its status as already having begun representation precludes classification of the insurer as a volunteer. *See Mullenix,* 97 N.M. at 620, 642 P.2d at 606; *Auto Driveaway,* 87 N.M. at 78, 529 P.2d at 304; *see also State Farm Fire & Casualty Co. v. Cooperative of Am. Physicians, Inc.,* 163 Cal.App.3d 199, 209 Cal.Rptr. 251

---

**2.** We do not analyze this as a "loading and unloading" case. The injury occurred as incident to a necessary and foreseeable element of using the van—exiting upon arrival at the destination. The precedent cited by Progressive would all support this view and apparently establish coverage, despite its application of more stringent tests. *See, e.g., Galle v. Excalibur Ins.*

*Co.,* 317 N.W.2d 368, 370 (Minn.1982) (unloading injuries work related and not from use of vehicle for transportation; "person injured when he is entering a car intending to become a passenger would be allowed recovery"); *Reynolds,* 400 So.2d at 497 (causal relationship required between use as vehicle and injury).

(1984) (defending insurer claiming noncoverage not a volunteer in settling because under duty to defend and settle based on allegations on face of complaint); *Rooney v. Township of W. Orange*, 200 N.J.Super. 201, 491 A.2d 23 (1985) (once demand made, insurer had duty to defend and was not volunteer). Progressive's own inaction in failing to provide a defense forced American General to continue its representation, and it cannot now hide behind its own misdeeds to force American General to bear the burden of the defense.

We hold that American General was not acting as a volunteer. Its defense was required by law and its fiduciary obligations to the insured, and it is entitled to subrogation for the costs of defense and good faith, reasonable settlement.

B. *American General's Failure to Reserve its Rights against Wade does not Preclude Subrogation Against Progressive.*

Progressive maintains that American General failed to obtain a reservation of rights that would have notified Wade that the insurer was undertaking the defense yet reserving the right to deny coverage. This omission, Progressive maintains, is fatal to American General's subsequent attempt to deny coverage.

█ It is true that a liability insurance carrier that assumes the defense in an action against its insured with knowledge of possible grounds for noncoverage and that does not reserve its right to later deny coverage is precluded from later asserting that no coverage exists. *Pendleton*, 317 F.2d at 99. "[T]he insurer's unconditional defense of an action brought against its insured constitutes a waiver of the terms of the policy and an estoppel of the insurer to assert the defense of noncoverage." *Id.*

█ American General undoubtedly lost its right to assert noncoverage *against Wade* by its failure to expressly reserve its rights. It is not, however, precluded from asserting subrogation against Progressive. The reason for the rule estopping the insurer from denying coverage without the reservation of rights is the presumptive potential of prejudice *to the insured* caused by the insurer's total control of the litigation, the insured's reliance on the insurer, and the insurer's fiduciary duty *vis-a-vis the insured. Id.* The rule does not operate to preclude a suit such as this whereby one insurer attempts to assert that another insurer provided primary coverage. Progressive simply was not, and could not have been, a party to a reservation of rights agreement between American General and Wade. Any omission on the part of American General in no way implicates Progressive; American General had no duty in this regard toward Progressive, and the reasons for the rule as articulated above indicate that a dispute between two insurers over coverage is not within the scope of the rule.[3]

III. **THE REASONABLENESS OF THE SETTLEMENT.**

█ Progressive argues that, even if we find it had a duty to defend and American General can assert subrogation, it is subrogated only to the extent that the settlement with Michael was reasonable and we must remand for such a determination.

American General and Wade notified Progressive of the original suit, and American General made demand upon Progressive to assume Wade's defense. Progressive refused to defend, breaching its duty to Wade. An insurer suffers serious consequences upon its unjustified failure to defend after demand, including loss of the right to claim the insured settled without its consent and liability for a judgment entered against the insured or good faith settlement agreed to by the insured. *State Farm Fire & Casualty Co. v. Price*, 101 N.M. 438, 684 P.2d 524 (Ct.App.) (unjustifi-

**3.** The nature of an action in subrogation dictates the same result. American General as subrogee steps into the shoes of Wade and asserts its rights derivatively. *State Farm Mut. Auto. Ins. Co. v. Foundation Reserve Ins. Co.,* 78 N.M. 359, 431 P.2d 737 (1967). This suit in no way implicates Wade, and the absence of a reservation giving Wade notice is simply irrelevant to this suit.

able failure to defend subjects insurer to liability for good faith settlement), *cert. denied*, 101 N.M. 362, 683 P.2d 44 (1984). However, the settlement must be reasonable, and the insurer is not precluded from asserting as a defense that the settlement was unreasonable. *See id.; Lujan v. Gonzales*, 84 N.M. 229, 501 P.2d 673 (Ct.App.), *cert. denied*, 84 N.M. 219, 501 P.2d 663 (1972). There are no indications that American General settled the claim with Michael in bad faith or unreasonably—at the time of settlement it was not clear that American General would not be liable for the settlement and costs of defense. Moreover, Progressive had the opportunity to participate in the defense and settlement negotiations, yet waived its right to participate and breached its obligation to defend. However, Progressive is only liable for a reasonable settlement, and on remand the reasonableness of the settlement shall be determined.

## IV. COSTS AND ATTORNEY'S FEES.

### A. *The Attorney's Fees Incurred in the Defense of Wade.*

Progressive maintains that American General cannot recover the costs incurred in defense of Wade. It argues American General as a subrogated insurer has only the rights Wade would have against Progressive and is entitled to recover only the amount actually paid out to discharge the obligation. Because Wade paid no attorney's fees and therefore has no right to fees against Progressive, American General has no such right.

█ We reject this argument. We have already determined that Progressive had a duty to defend, and, because of the nature of the coverages involved, the obligation fell exclusively to Progressive. It refused to fulfill its obligation, forcing

American General to continue defense or potentially subject itself to liability for breach of its good faith and fiduciary obligations to Wade. Progressive's breach of its duty did not relieve it of its obligations, even though the defense was undertaken by the other insurer. *See Price*, 101 N.M. at 442–43, 684 P.2d at 528–29 (secondary insurer not relieved of obligation to defend, even though primary insurer provided defense); *Lujan*, 84 N.M. at 238, 501 P.2d at 682 (insurer liable to insured for reasonable expenses incurred in defense for breach of duty to defend). If Wade had provided the defense himself, Progressive would have been liable for his attorney's fees. American General undertook the defense, as it undertook to pay the settlement, and as subrogee it is able to assert these costs against Progressive.

We have previously determined that an excess insurer exposed to liability by virtue of its coverage that has undertaken a defense has the right to be reimbursed for those costs under a theory of subrogation against the primary insurer that refused to defend, *State Farm Mutual Automobile Insurance Co. v. Foundation Reserve Insurance Co.*, 78 N.M. 359, 431 P.2d 737 (1967). It would certainly be anomalous in a situation like this where the defending insurer was ultimately not responsible for coverage to not require the insurer responsible for coverage to bear the costs of defense.

### B. *No Pro Rata Distribution.*

█ Progressive further argues that if we find it is responsible for defense costs and attorney's fees, then we must determine that the costs should be distributed between both insurers pro rata based on the extent of each insurer's potential liability.[4]

---

4. In support of this argument, Progressive refers us to *CC Housing Corp. v. Ryder Truck Rental, Inc.*, 106 N.M. 577, 746 P.2d 1109 (1987), and *American Employers' Insurance Co. v. Continental Casualty Co.*, 85 N.M. 346, 512 P.2d 674 (1973). We find this precedent inapposite to the issue before us. *CC Housing*, while not addressing proration in the context of the duty to defend, did determine that two insurers, both pri-

marily liable, should prorate a loss in proportion to their respective policy limits. In *American Employers'* two insurers both had a duty to defend and *to provide coverage for the liability*. We were unable to ascertain which insurer provided primary coverage and held both insurers liable for a pro rata share of the cost of defense based on the maximum exposure of each insurer. More to the point is *State Farm Mutual*

Although it is true that the duty of an insurer to defend is distinct from its obligation to pay, *Mullenix,* 97 N.M. at 619, 642 P.2d at 605, and that American General's duty to undertake Wade's defense arose when it appeared from the face of the complaint that the accident fell within the scope of the homeowner's policy, *see Western Commerce Bank v. Reliance Insurance Co.,* 105 N.M. 346, 732 P.2d 873 (1987), in this case, because of the mutual exclusivity of the two policies, the liability and sole responsibility for coverage ultimately fell to Progressive. Nonetheless, Progressive refused to undertake the defense and left it to American General to protect its interests.[5] This is not a case of overlapping liability where pro rata distribution of costs would be required. In other words, even if we were to apply pro rata distribution of costs based on the applicable policy limits of each insurer, Progressive's policy limits are in some amount greater than zero while American General's policy limit is zero. Accordingly, a pro rata distribution would require Progressive to pay all costs of defense. *See State Farm Mutual Ins. Co. v. Foundation Reserve Co.,* 78 N.M. 359, 431 P.2d 737 (1967); *see also Continental Casualty Co. v. Zurich Ins. Co.,* 57 Cal.2d 27, 366 P.2d 455, 17 Cal.Rptr. 12 (1961) (all insurers obligated to defend must pay pro rata cost of defense to extent each insurer *paid cost of judgment*); *Aetna Casualty & Surety Co. v. Coronet Ins. Co.,* 44 Ill.App.3d 744, 3 Ill.Dec. 371, 358 N.E.2d 914 (1976) (breach by primary insurer of duty to defend; excess insurer entitled to recover all attorney's fees despite its liability for part of judgment). Only Progressive is liable, and Progressive

should have undertaken the defense as soon as it became apparent that the suit was covered by the automobile policy.

■ We do agree with Progressive, however, that its duty to defend did not arise until demand was made. *See Price,* 101 N.M. at 443, 684 P.2d at 529. Prior to the demand, American General was acting pursuant to its own independent obligation to defend Wade under the facts as they appeared in the complaint. Progressive is thus not responsible for the costs of the litigation incurred prior to demand. *See Rooney v. Township of W. Orange,* 200 N.J.Super. 201, 491 A.2d 23 (1985).

We therefore hold that the accident involving Michael was within the scope of Wade's automobile insurance coverage provided by Progressive. We also hold that Progressive had a duty to provide a defense for Wade and that the duty arose upon its notification of the relevant facts underlying the incident that indicated that the injuries to Michael were incurred in connection with the use of the automobile.

Accordingly, we reverse the judgment of the district court and remand for a factual determination of the reasonableness of the Michael settlement, the costs incurred in defense of Wade subsequent to Progressive's receipt of notice that the suit implicated its coverage, and for resolution of the remaining claims raised regarding bad faith and violation of the various statutory unfair trade practices causes of action.

IT IS SO ORDERED.

WILSON, J., concurs.

MONTGOMERY, J., specially concurring.

---

*Automobile Insurance Co. v. Foundation Reserve Co.,* 78 N.M. 359, 431 P.2d 737 (1967), which considered how to apportion defense costs when only one insurer provides primary coverage. Plaintiff insurance company was secondarily liable to defendant insurer. Defendant refused to defend or pay, despite its duty and demand, and plaintiff, pursuant to its duty, undertook defense and settlement and brought suit as a subrogee. We affirmed the trial court's judgment for the amount of defendant's coverage plus plaintiff's attorney's fees and costs incurred in the initial defense.

5. In *Mullenix* we determined that the independent duty to defend continues even after it appears from facts established after the complaint has been filed that liability or coverage differs from that originally anticipated. However, in this case, where American General ultimately has no coverage liability *and* the other insurer has liability, we do not analyze this in the context of American General's independent duty to defend. The question is one of American General's subrogation and its ability to assert derivatively Wade's claim against Progressive for refusing to defend.

MONTGOMERY, Justice (specially concurring).

I join in Parts II–B, III and IV of the plurality opinion. As to Part II–A, I would point out that the equitable remedy of subrogation generally presupposes that one secondarily liable pays the debt of another primarily liable and, either by contract or by operation of law, becomes entitled to the rights and remedies of the original creditor. *See State Farm Mut. Auto. Ins. Co. v. Foundation Reserve Ins. Co.,* 78 N.M. 359, 363, 431 P.2d 737, 741 (1967). In this case, as the plurality opinion points out, the liabilities of the two insurers were mutually exclusive; only one was primarily liable, and the other was not liable at all. Therefore, even assuming the correctness of the holding in Part I that there was coverage under the Progressive policy, American General's claim for subrogation does not fit the classical model of the remedy.

However, I believe extending the remedy of subrogation to an insurer in American General's position is consistent with the equitable principles underlying the doctrine. American General was caught in a dilemma: It had to defend the lawsuit based on the allegations in the complaint, and it could not abandon the defense when it discovered the facts affecting coverage and Progressive refused to defend. A reasonable settlement was in its insured's best interests, and American General was certainly not a "volunteer" in making such a settlement. Under these circumstances, assigning Mr. Wade's rights and remedies against Progressive to American General seems consistent with "equity and good conscience." *See id.*

As for Part I of the plurality opinion, while I have serious reservations about the result and rationale in *Sanchez v. Herrera,* 109 N.M. 155, 156–57, 783 P.2d 465, 466–67 (1989), in the interest of *stare decisis* I concur in the result in this case.