**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 10, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WESTERN HERITAGE BANK, f/k/a
Mesilla Valley Bank; JERRY W.
BELL, III; LUCINDA LOVELESS,

　　Plaintiffs - Appellants,

v.

FEDERAL INSURANCE COMPANY,

　　Defendant - Appellee.

No. 13-2077

(D.C. No. 2:11-CV-00630-MV-WPL)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE,** Chief Judge, **EBEL** and **PHILLIPS**, Circuit Judges.

---

In this diversity action arising out of a denial of insurance coverage,

Western Heritage Bank ("WHB") and two of its employees (collectively, "WHB

parties") appeal the district court's grant of summary judgment to defendant

Federal Insurance Company ("FIC").  They argue the district court erred in

concluding FIC had no duty to defend the bank, or its employees, in an action

which had been brought against them in state court.  FIC opposes the policy

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

interpretation of the WHB parties and also contends the district court's judgment can be affirmed on the alternative grounds that WHB colluded with the plaintiffs in the underlying state action both in their settlement and determination of damages. The WHB parties have also filed a motion to certify a question to the New Mexico Supreme Court.

We deny the motion to certify and affirm.

**I. BACKGROUND**

The instant action was brought by Western Heritage Bank and two of its employees, Jerry Bell and Lucinda Loveless, against FIC. The WHB parties filed a declaratory judgment action asking the court to rule that FIC owed them a duty to defend and indemnify for damages in an underlying Texas state court action brought by Hawkins Boulevard, LLC ("Hawkins"). The WHB parties also brought claims for bad faith and breach of the duties to investigate, defend, indemnify, and settle within the policy limits; a claim under the New Mexico Unfair Insurance Practices Act; and a claim under the Unfair Trade Practices Act.

Hawkins filed its suit against Mesilla Valley Bank ("Mesilla"), WHB's predecessor in interest, on January 24, 2008, in Texas state court. R. Vol. IV at 626; R. Vol. V at 656 (Original Hawkins Petition). Hawkins amended the petition several times, adding Loveless, Bell, and the Bank's attorneys as defendants. R. Vol. V at 663 (Second Amended Petition); id. at 686 (Third Amended Petition); id. at 703 (Fourth Amended Petition). The Fourth Amended Petition named as

2

defendants only Mesilla, n/k/a WHB, and Jo Ann Miller.  Id. at 703.  The factual allegations in each petition are basically the same, but the most detailed petition is the Third Amended Petition.[1]  The defendants named in the Third Amended Petition were Mesilla, n/k/a WHB; current and former Bank officials: Jo Ann Miller, Joe H. Morales, Jerry Bell, Lucinda Loveless; and the Bank's outside counsel, Victor M. Firth and his firm, Firth Johnson Martinez.  Id. at 686.[2] Hawkins' main allegation was that Mesilla, Morales, Loveless, Bell, Firth, and Firth's firm, prepared and executed on Hawkins' property "fraudulent Deeds of Trust purporting to encumber a non-existent 'Ground Lease' and all improvements to the Property with a security interest in favor of the Bank."  Id. at 687-88.

The Hawkins lawsuit arose out of the business relationship between Mesilla and Lujo Corporation and Lujo Investments, Ltd. ("Lujo").  In August 2004, Lujo used a loan from Mesilla to renovate Hawkins' property in El Paso, Texas, for use as an El Pollo Loco restaurant.  Hawkins' petition alleged that its lease with Lujo

---

[1] The duty to defend is determined by looking to "the facts actually known" by the insurer "at the time of demand."  Valley Imp. Ass'n, Inc. v. U.S. Fid. & Guar. Corp., 129 F.3d 1108, 1117 (10th Cir. 1997) (citing Am. Gen. Fire & Cas. Co. v. Progressive Cas. Co., 799 P.2d 1113, 1116 (N.M. 1990)).  Therefore, although the Fourth Amended Petition was the operative document at the time the Hawkins suit settled, the WHB parties filed their claims for defense based on the prior petitions.  Because the Third Amended Petition has the most detailed facts, it is used to describe Hawkins' allegations against the WHB parties.

[2] Only Western Heritage Bank, Jerry Bell, and Lucinda Loveless are plaintiffs-appellants in this appeal.

3

"contained express terms barring the use of the Lease and the improvements as collateral." Id. at 688. Hawkins contends that Mesilla's attorney, Firth, and his law firm were aware that the lease contained this restriction. In spite of this knowledge, the attorney and firm "prepared a fraudulent Deed of Trust purporting to encumber the 'leasehold and other interests' of LUJO in and to the Property and also encumbering 'all buildings and other improvements.'" Id. at 690. Ultimately, three such deeds were filed in the El Paso County records to secure Mesilla's liens.

Lujo vacated the Hawkins property in April 2007, but Mesilla's Deeds and liens were not released. Hawkins asked Mesilla to remove the encumbrances, but Mesilla refused to do so unless it was paid hundreds of thousands of dollars. The liens were ultimately released in October 2008. Hawkins alleged this delay resulted in lost business opportunities for a long-term lease with a new tenant. The Third Amended Petition brought claims for slander of title; tortious interference with Hawkins' Lease Agreement; tortious interference with expectant contracts and business relations; fraudulent claim against real property; breach of contract; and declaratory judgment.

Mesilla had purchased an insurance policy from FIC, No. 6801-4792, with a policy period of September 22, 2005 to June 30, 2008. This policy included several subparts with separate premiums. All parties agree that the Bankers Professional Liability ("BPL") section does not apply to this case. What the

4

parties contest and what has become the focus of this litigation is the coverage of the Director and Officers Liability ("DOL") section.

The DOL section has three insuring clauses. Insuring Clauses 1 and 2 concern claims against an **Insured Person**, which "means any natural person who was, now is or shall become . . . a duly elected or appointed director, officer or the in-house general counsel of any **Organization** chartered in the United States of America. . . ." R. Vol. II at 177, 193. Insuring Clause 3 covers **Loss** that the **Organization** becomes legally obligated to pay because of an **Organization Claim**. Id. at 197. **Organization Claim** includes "a civil proceeding commenced by the service of a complaint . . . against the **Organization** for a **Wrongful Act**, including any appeal therefrom." Id. **Organization** means "those organizations designated in ITEM 5 of the Declarations of this Coverage Section." Id. at 181. ITEM 5 lists Mesilla Valley Bank, Inc. Id. at 176. The DOL section has a list of exclusions. For the purposes of this litigation, the exclusion that is at the center of the parties' dispute is 4.j., which excludes coverage "for **Loss** on account of any **Claim** . . . based upon, arising from, or in consequence of the performing or failure to perform **Professional Services** or **Lending Services**." Id. at 182, 184.

*The District Court's Ruling on Summary Judgment*

Both the WHB parties and FIC filed motions for summary judgment. FIC moved for summary judgment for two independent reasons: 1) the plain terms of the DOL policy precluded coverage, and 2) the WHB parties colluded with

5

Hawkins in the settlement and damages phase of the Hawkins litigation.  The

WHB parties moved for partial summary judgment on the grounds that the DOL

policy arguably covered the Hawkins suit, triggering FIC's duty to defend.

The district court granted summary judgment to FIC on the basis that the

DOL policy did not cover the Hawkins lawsuit.  R. Vol. VII at 1218.  After

reciting the uncontroverted facts, the district court quoted the DOL general

coverage clause: FIC "shall pay, on behalf of each of the Insured Persons, Loss

for which the Insured Person is not indemnified by the Organization on account of

any Claim first made against the Insured Person, individually or otherwise during

the Policy Period . . . for a Wrongful Act . . . ." Id. at 1221.  The court quoted the

definitions for "Claim," "Insured Person," "Loss," and "Wrongful Act." Id.  The

district court then quoted Exclusion 4.j. and the policy's definition of "Lending

Services." Id. at 1221-22.  Although the district court agreed with WHB that the

duty to defend under New Mexico law is broader than the duty to indemnify, the

court held that Exclusion 4.j. clearly excluded the Hawkins lawsuit from

coverage.  Id. at 1224.  The court stated:

> [The WHB parties] fail to acknowledge that the Hawkins
> Complaints allege that Hawkins' damages resulted both
> from the Bank's fraudulent recording of the liens and its
> subsequent refusal to remove them, and the allegations
> in the Complaints establish that both actions *arose from,
> or were in consequence of*, the Bank's and its Officers
> performance, and failure to properly perform, Lending
> Services.  The Plaintiffs point to no other facts causing
> Hawkins' injury and damages that do not fall within

6

Exclusion 4.j.

Id. at 1224-25 (emphasis in original).

The district court also evaluated the WHB parties' arguments that refusing to release the liens was an independent intervening cause that resulted in part of the Hawkins lawsuit being based on non-Lending Services. Id. at 1225. The court noted that "arising from" is broadly construed under New Mexico insurance law. Id. "Exclusion 4.j.'s broad language does not require a lending activity to be the direct cause of injuries - it requires only that the 'claim [be] . . . based upon, arising from, or in consequence of the performing or failure to perform . . . Lending Services.'" Id. at 1226. Thus, according to the district court's ruling, the "intervening cause" argument was "misplaced" because it was the placement of the liens and subsequent refusal to remove them "in the course of, and as a direct result of, the Bank's lending services and activities," that formed the basis of the Hawkins lawsuit. Id. The court held that "[a]s a matter of law, Hawkins' claims arose from, and in consequence of, the Plaintiffs' lending services and activities, and the D&O Section Exclusion 4.j expressly precludes coverage on those claims." Id.

The district court did not mention the WHB parties' argument that the definition of "Professional Services" adds back two categories (legal services and post control actions) because they are exceptions to Exclusion 4.j. The district court did not analyze whether these exceptions to the exclusion made the policy

7

ambiguous, as WHB argued, but instead the court stated that "contrary to the Plaintiffs' bald assertions, there are no material questions of fact regarding causation or whether the exclusion applies, nor is there any ambiguity in the meaning of Exclusion 4.j." Id. As a result of these rulings, it was unnecessary for the court to reach FIC's collusion argument.

## II. ANALYSIS

"We review a grant of summary judgment de novo, applying the same standard as the district court. . . . We view all facts and evidence in the light most favorable to the party opposing summary judgment." Schrock v. Wyeth, Inc., 727 F.3d 1273, 1279 (10th Cir. 2013). Summary judgment should be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### A. Does Exclusion 4.j. Have Any Exceptions?

The WHB parties' first argument is that Exclusion 4.j. has three carve-outs that add back coverage. "In diversity cases, the substantive law of the forum state governs the analysis of the underlying claims . . . but federal law controls the ultimate, procedural question whether judgment as a matter of law is appropriate." Haberman v. Hartford Ins. Grp., 443 F.3d 1257, 1264 (10th Cir. 2006). The forum state's substantive laws include choice of law rules. Elliot v. Turner Const. Co., 381 F.3d 995, 1001 (10th Cir. 2004). The district court assumed New Mexico's law governs the interpretation of the contract, and the parties have not

8

raised any arguments to the contrary. Unlike jurisdictional issues, choice of law need not be raised sua sponte. See Flying J Inc. v. Comdata Network, Inc., 405 F.3d 821, 831 n.4 (10th Cir. 2005). As a result, we also will apply New Mexico law in interpreting the insurance contract at issue.

Under New Mexico law, "[i]t is well settled that, absent a statute to the contrary, 'insurance contracts are construed by the same principles which govern the interpretation of all contracts.'" Rummel v. Lexington Ins. Co., 945 P.2d 970, 976 (N.M. 1997) (quoting 2 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3D § 21:1 (1996)). The court's "primary objective" in interpreting a contract "is to give effect to the intent of the parties." Benz v. Town Center Land, LLC, 314 P.3d 688, 694 (N.M. Ct. App. 2013) (quoting Hansen v. Ford Motor Co., 900 P.2d 952, 960 (N.M. 1995)). "[T]he interpretation of terms within an insurance policy is 'a matter of law about which the court has the final word.'" United Nuclear Corp. v. Allstate Ins. Co., 285 P.3d 644, 647 (N.M. 2012).

The first step in interpreting policy terms is to look at the language of the contested term itself, as well as other parts of the policy. Id. at 649. "Insurance policy terms 'cannot be analyzed in a vacuum,' and a policy 'must be construed in its entirety, with each clause interpreted in relation to others contained therein.'" Id. Exclusion 4.j. excludes coverage "for **Loss** on account of any **Claim** . . . based upon, arising from, or in consequence of the performing or failure to

9

perform **Professional Services** or **Lending Services**." R. Vol. II at 182, 184.

FIC emphasizes strongly that the term "arising from" indicates that this is a "broad form exclusion" that "as a matter of law must be interpreted in a manner that gives effect to the broad language of exclusion intentionally used." Appellee's Br. at 19. But without knowing the definitions of "**Professional Services**" and "**Lending Services**," it cannot be determined whether the Hawkins lawsuit falls under Exclusion 4.j.

FIC argues that the Hawkins lawsuit falls under the definition of "Lending Services" because WHB "placed liens on the Hawkins leasehold to secure and/or restructure Lujo's credit, and it therefore is incontrovertible that the liens about which Hawkins complained, and demanded release, 'arose from' and were 'in consequence of' Lending Services provided by the Bank." Appellee's Br. at 18. The policy defines **Lending Services** as "any act performed by an **Insured** for a **Lending Customer** of the **Organization** in the course of extending or refusal to extend credit or granting or refusal to grant a loan or any transaction in the nature of a loan, including any act of restructure, termination, transfer, repossession or foreclosure." R. Vol. II at 180. If only this language is considered, WHB's actions in placing the liens and refusing to release them falls under Lending Services. However, the definition section also states that "**Lending Services** shall not include any **Professional Service**." Id. Additionally, "**Professional Services**" is listed in Exclusion 4.j., and as noted above, New Mexico law looks

10

to how clauses are understood when read together, as well as how the clauses are understood when read in the context of the entire policy. See United Nuclear, 285 P.3d at 649. Therefore, when determining whether the Hawkins allegations in fact "arise from" **Lending Services**, we must also consider the definition of **Professional Services**.

Our analysis then should not end with the definition of **Lending Services**, but should also include the definition of **Professional Services**, both because it is mentioned in the definition of **Lending Services** and because it is the other part of Exclusion 4.j. The DOL section defines **Professional Services** as:

> **Loan Servicing** and only those services performed or required to be performed by an **Insured** for or on behalf of a **Customer** of an **Insured**:
> a. for a fee, commission or other monetary consideration;
> b. where a fee, commission or other monetary consideration would usually be received by the **Insured** but for business or other reasons is waived by the **Insured**; or
> c. for other remuneration which inures to the benefit of such **Insured**.

R. Vol. II at 181. **Loan Servicing** does not include "any act of restructure, termination, transfer, repossession or foreclosure . . . ." Id. at 180.[3] **Professional**

---

[3] "**Loan Servicing** means the servicing of any loan, lease or extension of credit (whether consumer, commercial, mortgage banking or otherwise, but not including financing for investment banking, or for leveraged management buyouts). **Loan Servicing** includes the following servicing activities: record keeping, billing and disbursements of principal or interest, receipt or payment of insurance premiums and taxes, credit reported or statements of creditworthiness,

(continued...)

11

**Services** does not include: "(1) . . . the practice of law or the rendering of legal services; (2) services performed by any entity which the **Insured** shall have acquired ownership or control as security for a loan, lease or other extension of credit; or (3) **Lending Services**." Id. at 181. In the discussion that follows, we will refer to the first exception as "legal services" and the second as "post-control actions."

Under the policy's plain language, legal services and post-control actions are exceptions to Exclusion 4.j. The definition of Professional Services sets out three exceptions: legal services, post-control actions, and Lending Services. Unless excluded by other language, these exclusions to the definition of Professional Services are not part of Exclusion 4.j. Of course, Lending Services is excluded by Exclusion 4.j. Although the first two exceptions (legal services and post-control actions) could conceivably fit under the definition of Lending Services, the structure of Exclusion 4.j. discourages this reading. If legal services and post-control actions are merely subcategories of Lending Services, then it would be unnecessary to list them separately from Lending Services. The policy could have stated that Professional Services does not include the following kinds

---

[3](...continued)
determination of the depreciation amount of property (but not projections of or an appraisal for residual or future value of property). **Loan Servicing** shall not include any act of restructure, termination, transfer, repossession or foreclosure, or any act arising out of the operation or control of any entity or property that the **Insured** acquired as security or collateral for any loan, lease or extension of credit." Id.

12

of Lending Services: 1) legal services, 2) post-control actions, and 3) all others under the policy definition of Lending Services. However, Exclusion 4.j. did not do this. Instead, it listed them as if they were three separate categories.

FIC makes several arguments against this reading. FIC admits that the definition of Professional Services is to be read into Exclusion 4.j., but argues against reading in "the second part of the relevant definitional language, which lists what things are 'not' included within Professional Services," because FIC believes the three listed items "merely narrow[] the definition of Professional Services," instead of "affirmatively provid[ing] coverage under the D&O Section for the items listed." Appellee's Br. at 27. But the purpose of defining Professional Services in the policy is to determine what Exclusion 4.j. excludes. If X does not fall under the definition of Professional Services, then it is not excluded by 4.j. If X otherwise meets the policy requirements, then it is covered.

When FIC argues that "[a]n exclusion cannot create coverage if coverage did not exist in the first instance under the insuring agreement," it is technically correct. Appellee's Br. at 28 n.7. What FIC misses is that the policy definition of Professional Services takes legal services and post-control actions out of Exclusion 4.j. Therefore, if they otherwise would be covered by the policy, then they are covered because Exclusion 4.j. is not a bar. Cf. Greystone Const., Inc. v. Nat'l Fire & Marine Ins. Co., 661 F.3d 1272, 1289 (10th Cir. 2011) ("Exceptions to exclusions [in commercial general liability insurance policies] narrow the

13

scope of the exclusion and, as a consequence, add back coverage. But it is the initial broad grant of coverage, not the exception to the exclusion, that ultimately creates (or does not create) the coverage sought.") (quoting David Dekker et al., The Expansion of Insurance Coverage for Defective Construction, 28 Constr. Law, Fall 2008, at 19-20).

Despite FIC's protestations to the contrary, the text of Exclusion 4.j. supports reading legal services and post-control actions as exceptions, which means a loss stemming from either of those two that otherwise meets the policy's terms is covered. See, e.g., Erwin v. United Benefit Life Ins. Co., 371 P.2d 791, 794 (N.M. 1962) ("By every sound rule of construction, [an] instrument should be interpreted . . . if possible to give a sensible meaning and effect to all its provisions; and so as to avoid rendering portions of it contradictory and inoperative, by giving effect to some clauses to the exclusion of others.") (internal quotations and citations omitted); Benz, 314 P.3d at 695 ("We view the contract as a harmonious whole, give meaning to every provision, and accord each part of the contract its significance in light of other provisions.") (quoting Pub. Serv. Co. of N.M. v. Diamond D Constr. Co., 33 P.3d 651, 659 (N.M. Ct. App. 2001)).

B. Does the Hawkins Lawsuit Cover an Exception to Exclusion 4.j.?

Having determined that Exclusion 4.j. contains two exceptions, our next step is to analyze whether there is a genuine dispute of material fact as to whether

any of the allegations or underlying facts in the Hawkins lawsuit constitute legal services or post-control actions. However, the WHB parties have not presented any arguments relating to how the policy covers claims against the individual WHB employees under either the "legal services" or "post-control actions" exceptions.

Nor have they explained how they meet the "legal services" exception for the claims against the bank. They merely state that the Hawkins lawsuit included claims "for the wrongful acts of [the bank's] attorneys, while rendering legal services," and the attorneys' negligence was then "imputed to the Bank" under agency law. Appellants' Br. at 14, 43. WHB argues that "[w]hether the Bank performed legal services through its agents by failing to release the liens is a question of fact," and that "FIC agrees that the Legal Services exception does not require that the Legal Services be performed by the Bank." Id. at 43, 44.

Although the question of whether the alleged wrongful acts of WHB fall within the "legal services" exception is fact intensive, the WHB parties are still obligated on appeal to present more than conclusory statements about how they meet this exception and Insuring Clause 3. They have presented no argument as to what constitutes the "practice of law" or "legal services." They have not provided support for their contention that the Hawkins petition alleged wrongful acts that were based on the "practice of law." Although the Hawkins suit involves actions taken by an attorney, the mere recording of liens and subsequent

15

refusal to release them would not inherently require a license to practice law. Further, Insuring Clause 3 requires a claim against the organization for a wrongful act, and the definition of wrongful act requires that the error, act, omission, etc. be "attempted, or allegedly committed or attempted" by the organization. R. Vol. II at 197, 199. The WHB parties rely on the attorney's recording and failure to release the liens as the bank's "wrongful act," but without explaining how there are facts to support this argument. Without any developed argument as to how some of the allegations in the Hawkins complaint are covered under Insuring Clause 3, the WHB parties' assertion that they meet the "legal services" exception to Exclusion 4.j. is without any factual support and is therefore waived. See United States v. Magnesium Corp. of Am., 616 F.3d 1129, 1137 n.7 (10th Cir. 2010) ("'[I]ssues adverted to' but 'unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting Murrell v. Shalala, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994)).

The WHB parties also argue that the Hawkins lawsuit covers the second exception for post-control actions because the allegations concern what the Bank did after it foreclosed on the loan. According to the WHB parties, there is a disputed issue of fact for this exception:

> Assuming the second carve-out required ownership or control of the LUJO security, FIC should have defended if the Hawkins complaint was unclear on that issue of fact. Plaintiffs need not at this stage respond to FIC's factual coverage argument, which is evidence of

16

> questionable coverage and a duty to defend. However,
> Plaintiffs' refer to the Bank Demand Letter, which
> states: "The Franchise personalty and equipment in the
> Hawkins location **were foreclosed upon...and were
> made available for WKS to continue to operate the
> LUJO franchise and leasehold estate**."

Appellants' Br. at 44-45 (internal citations omitted) (emphasis in original). The WHB parties further contend that because the bank "repossessed the **personal property and foreclosed on the loan equipment** pursuant to Article IV of the Uniform Commercial Code, the actions by the Bank were services performed by an entity over which the Bank acquired ownership or control." Id. at 45 (emphasis added). The WHB parties' next statement reveals why their argument is without merit, however: "Because the Bank was conducting post-control actions over the collateral, the Claims against the Bank are re-included into coverage." Id.

The "post-control actions" exception to Exclusion 4.j. does not refer to actions taken by the insured, in this case WHB, but instead to actions that constitute "services performed by any entity" that the bank owns or controls. R. Vol. II at 181. Therefore, to survive summary judgment, there must be factual support for the assertion that the bank took control of an "entity," and *the "entity" then performed a "service*." There are no allegations here to support that theory. The Hawkins suit is clearly outside of this area of coverage, and thus there was no duty to defend or indemnify.

17

Because the WHB parties have failed to explain how the Hawkins petition could arguably fall within either exception to Exclusion 4.j., the remaining arguments in this appeal are moot, including FIC's collusion argument.

AFFIRMED.  The WHB parties' motion to certify is DENIED.

Entered for the Court


Mary Beck Briscoe
Chief Judge